UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

EAST COAST TEST PREP, LLC. et. al.,                    Civ. No. 15-3705 (JRT/JSM)

Plaintiffs,                                    **ORDER**

v.

ALLNURSES.COM, Inc. et. al.,

Defendants.

The above matter came before the undersigned on Plaintiffs' Motion to Compel Responses to Previously Served Discovery and to Allow Immediate Discovery and to Shorten Time for Response [Docket No. 56].   Richard L. Ravin, Esq., Charles S. Kramer, Esq. and Robert A. Lengeling, Esq. appeared on plaintiffs' behalf.  Keith John Miller, Esq., Justin Taylor Quinn, Esq. and John D. Reddall, Esq. appeared on defendants' behalf.

The Court, being duly advised in the premises, upon all of the files, records, and proceedings herein, and for the reasons described in the Memorandum below, now makes and enters the following Order:

**IT IS HEREBY ORDERED**:

1.     Plaintiffs' Motion to Compel Responses to Previously Served Discovery and to Allow Immediate Discovery and to Shorten Time for Response [Docket No. 56] is **GRANTED** in part and **DENIED** in part as described in the Memorandum below.

2.     As the parties have already conducted their conference pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, the Rule 16 conference has been held, and the Court has issued the Pretrial Scheduling Order, plaintiffs are free to serve their

First Request for Production of Documents on defendants (attached to Plaintiffs' Memorandum of Law as Exhibit A).   Subject to paragraph 12 below, Defendant Allnurses.Com, Inc. ("Allnurses") shall provide substantive responses to Document Request Nos. 1-4 as to anonymous posters JustBeachyNurse, Pixie.RN, monkeyhq, duskyjewel and LadyFree28 on or before 14 days after the date of service of this discovery on it.   Responses to Document Request Nos. 5-9 shall be governed by Rule 34 of the Federal Rules of Civil Procedure.

3.      Upon receipt of Allnurse's responses to Document Request Nos. 1-4, plaintiffs may serve subpoenas on each internet service provider ("ISP") and online service provider ("OSP") identified by Allnurses, seeking documents or other information necessary to identify the name, address, and other information required to serve anonymous posters JustBeachyNurse, Pixie.RN, monkeyhq, duskyjewel and LadyFree28 (hereafter referred to as "John Doe" or "John Does") with the First Amended Complaint (or other operative complaint).   At the time of service of the subpoena on each ISP and OSP, plaintiffs shall also serve a copy of this Order on each ISP and OSP.

4.      Each ISP or OSP served with the subpoena and this Order is directed to preserve any information responsive to the subpoenas until the Court can decide any motions to quash that may be filed by the ISP, OSP or the John Does who are the subject of the subpoenas.

5.      Simultaneous with its response to Document Request Nos. 1-4, Allnurses shall communicate via the same means used by the John Does to make their allegedly defamatory remarks to Allnurses (e.g. via email or the Allnurses website or both) the

fact that subpoenas are soon to be served by plaintiffs on their respective ISPs or OSPs to obtain their identity, the exact statements purportedly made by each anonymous John Doe that plaintiffs allege is actionable speech, and that each John Doe will have the right to file a motion to quash the subpoena with this Court no later than 21 days after the date the subpoenas are served on their respective ISP or OSP.

6.      When the subpoenas are served on the ISPs and OSPs for the identifying information regarding the John Does, each ISP and OSP shall immediately provide a copy of the subpoena and this Order to their respective John Doe, describe the exact statements purportedly made by each anonymous John Doe that plaintiffs allege is actionable speech, and notify each John Doe that they have the right to file a motion to quash the subpoena with this Court no later than 21 days after the date the subpoena was served on the ISP or OSP.  The motion may be filed by the John Doe without revealing his or her identity, or the name of the John Doe can be revealed only to the Court.

7.      Each ISP and OSP which is the subject of a subpoena may file a motion to quash the subpoena with this Court no later than 21 days after the date of service of the subpoena upon it.

8.      Allnurses may participate in any motions to quash filed by any ISP, OSP or John Doe as amicus curiae.  If Allnurses chooses to file an amicus brief in connection with any motion to quash, it shall do so 7 days after the filing of each motion to quash.

9.      For any motion to quash filed by any ISP, OSP or John Doe, plaintiffs shall file a response to the motion 14 days after the service and filing of the motion to quash.

10.     All motions to quash, response to a motion to quash and amici submission shall include a memorandum of law (and affidavits if appropriate) in support or in opposition of the motion.  The memorandum of law submitted by any party (including Allnurses, as amici), ISP, OSP or John Doe shall comply with Local Rule 7.1(f) for the District of Minnesota.

11.     Upon receipt of any motions to quash by an ISP, OSP or John Doe, and responses to such motions, the Court will determine if a hearing is necessary or whether the motions will be decided on the papers.

12.     If Allnurses objects to Document Request Nos. 1-4 on grounds other than the right of the John Does to engage in anonymous free speech under the First Amendment, it shall serve its written objections on ATP no later than 3 days after the date of service of this discovery on it.  Pursuant to Local Rule 7.1, the parties shall meet and confer to resolve the objections no later than 3 days after service of Allnurses' objections on ATP.  If the objections are not resolved, ATP may move to overrule the objections on an expedited basis and shall contact this Court for an expedited hearing.


Dated:  December 18, 2015                          *Janie S. Mayeron*
                                                   JANIE S. MAYERON
                                                   United States Magistrate Judge

4

<u>**MEMORANDUM**</u>

**I.   BACKGROUND**

    **A.   <u>Amended Complaint</u>**

The facts relevant to the instant motion as alleged in the First Amended Complaint are as follows.  Plaintiff East Coast Test Prep, LLC, d/b/a Achieve Test Prep provides test preparation services for individuals seeking entry into various careers, including nursing.  First Amended Complaint, ¶ 15 [Docket No. 25, Ex. 1].  Plaintiff Mark Olynick owns Achieve Test Prep.  <u>Id.</u> (collectively, "ATP").  Defendant Allnurses.com, Inc. ("Allnurses") is a Minnesota corporation founded by Brian Short.[1]  <u>Id.</u>, ¶ 5. (collectively, "Allnurses").  Allnurses operates a website that describes itself as "the collective voice of the nursing community, supporting the profession by providing a place where nurses can network, share and learn from their peers."  <u>Id.</u>, ¶ 27.  Allnurses claims to be the largest peer-to-peer nursing site in the world.  <u>Id.</u>, ¶ 26.  On March 13, 2015, Allnurses stated that it had 10,172 readers online and 891,799 members.  <u>Id.</u>, ¶¶ 27-29.  Allnurses provides a platform for its members to post comments or questions and receive feedback and responses from members on various topics, including education and coursework or exams required for licensure.  <u>Id.</u>, ¶ 30.  To post a comment online, a user must register with the website.  <u>Id.</u>, ¶ 31.  To register as a member of the website, a user must create a unique user name and password.  <u>Id.</u>, ¶ 69.  There is no requirement that a user register under his or her legal name.  <u>Id.</u>, ¶ 70.

ATP alleged that the John Doe defendants were paid by Allnurses, Short, or one or more an unknown companies, (identified as "ABC Companies 1-10," First Amended

---

[1]    Short died in September, 2015, and the personal representative of his estate has been substituted in the instant lawsuit.  <u>See</u> Docket No. 80.

Complaint ¶ 12), to make false, misleading, defamatory and derogatory comments against ATP and favorable to Allnurses.  Id., ¶ 43.  These allegedly false statements were made by the following user names: JustBeachyNurse, monkeyhq, LadyFree28, duskyjewel, and Pixie.RN  Id., ¶¶ 106, 108-115, 120, 121, 155-172, 305, 314.  As a result of the statements by the John Doe defendants, ATP alleged that it has suffered harm to its business and loss of standing in the community.  Id., ¶¶ 310, 322, 330, 417, 444, 472, 492.

Count One of the Amended Complaint alleged defamation by John Doe defendants JustBeachyNurse, monkeyhq, LadyFree28 and duskyjewel.  Id., ¶¶ 305-312.  Count Two alleged defamation by Pixie.RN and Allnurses.  Id., ¶¶ 314-325.  Count Three alleged trade libel by JustBeachyNurse, monkeyhq, LadyFree28, duskyjewel, Pixie.RN, Allnurses and Short.   Id., ¶¶ 327-331.   Count Four alleged that the Communications Decency Act (47 U.S.C. § 230(c)) did not apply as a defense to liability because defendants' conduct was not in good faith.  Id., ¶¶ 333-347.  Count Five alleged Breach of Terms of Service by Allnurses and Short.  Id., ¶¶ 349-368.  Allnurses' Terms of Service stated that users were prohibited from posting "libelous information about a . . . school . . . or entity.  Any post which is violative of any law . . . will be taken down immediately."  Id., ¶ 352.  ATP alleged that Allnurses and Short violated the Terms of Service by failing to remove the libelous information and preventing ATP from posting statements correcting the false, defamatory and derogatory statements by Pixie.RN, Allnurses and others.  Id., ¶ 366.  Count Six alleged Breach of the Implied Covenant of Good Faith and Fair Dealing by Allnurses and Short.  Id., ¶¶ 370-374.  Count Seven alleged Promissory Estoppel as to Allnurses and Short based on the

6

promises made in the Allnurses' Terms of Service.  Id., ¶¶ 376-380.  Count Eight alleged misrepresentation.  Id., ¶¶ 382-407.  Count Nine alleged violation of the New Jersey Consumer Fraud Act.[2]  Id., ¶¶ 409-424.  Count Ten alleged trademark infringement against Allnurses and Short.  Id., ¶¶ 426-445.  Count Eleven alleged common law unfair competition against Allnurses and Short.  Id., ¶¶ 447-455.  Count Twelve alleged unfair competition in violation of New Jersey law.  Id., ¶¶ 457-460.  Count Thirteen alleged tortious interference with prospective economic advantage and contractual relations by JustBeachyNurse, monkeyhq, LadyFree28, duskyjewel, Pixie.RN, Allnurses and Short.  Id., ¶¶ 462-474.  Count Fourteen alleged the vicarious liability of Allnurses for the actions of Pixie.RN, who worked for Allnurses.  Id., ¶¶ 476-482.  ATP further alleged that JustBeachyNurse, monkeyhq, LadyFree28 and duskyjewel were volunteers, employees, servants, contractors or agents of Allnurses and were under the control of or intentionally induced by Allnurses to commit the wrongful conduct alleged.  Id., ¶ 484.  Count Fifteen alleged contributory, vicarious and inducement liability against Allnurses, Short and defendants ABC Companies.  Id., ¶¶ 487-494.  Count Sixteen alleged "Acting in Concert Liability" against the John Doe defendants, ABC Companies, Allnurses and Short.  Id., ¶¶ 496-500.

### B.   Service of Discovery and Transfer of Lawsuit

ATP served discovery on Allnurses and Short when this matter was still venued in New Jersey state court.  Plaintiffs' Memorandum in Support of Motion ("Pls.' Mem."),

---

[2]   This suit was commenced in New Jersey state court, removed to the Federal District Court in New Jersey and then transferred to Minnesota.  At the hearing on the instant motion, ATP's counsel indicated that ATP would likely replead to conform the First Amended Complaint to Minnesota law.  Pursuant to the Pretrial Scheduling Order, any such motion to amend the First Amended Complaint shall be filed no later than January 25, 2016.  [Docket No. 84].

7

p. 12 [Docket No. 57]. ATP contended that when the matter was removed to Federal District Court in New Jersey, the pending discovery was never ruled on and was never the subject of a motion, until the instant motion. Id. Allnurses disagreed, arguing that Magistrate Judge James Clark, III of the District of New Jersey denied ATP's request to proceed with the state court discovery, based on language in a brief that ATP submitted to the court stating that Magistrate Judge Clark had "adopted the positon of Allnurses and Short that the state court discovery was a nullity as a result of removal." Defendants' Memorandum in Opposition ("Defs.' Mem.'), p. 4 (citing Declaration of Keith J. Miller, Ex. C (plaintiffs' brief dated July 6, 2015)) [Docket Nos. 66, 67-4].

ATP disagreed that Magistrate Judge Clark ever ruled on its discovery but at any rate, claimed it made no difference. In its Reply, ATP withdrew its request for responses to the discovery it had served in New Jersey and stood on its alternative request made in the instant motion – that it be permitted to immediately serve the identical (or virtually identical)[3] discovery on Allnurses.[4] Plaintiffs' Reply Memorandum ("Pls.' Reply"), p. 1 [Docket No. 75]. Consequently, the Court treats the discovery at issue as the proposed expedited discovery that ATP seeks to serve on Allnurses.

### C. ATP's Motion for Expedited Discovery

ATP moved for expedited discovery to identify the John Doe defendants named in the lawsuit so they could be served with the summons and First Amended Complaint.

---

[3]     At the hearing, ATP's counsel stated that there may be one or more typographical errors it would correct when it served the document requests on Allnurses.

[4]     The Order issued by Magistrate Judge Hammer on August 28, 2015, states: "Plaintiffs' motion for leave to serve subpoenas [D.E. 19] is DENIED WITHOUT PREJUDICE." [Docket No. 41, p. 9].

Pls.' Mem., p. 1.  To identify the John Does, ATP must first discover from Allnurses the Internet Protocol ("IP") address of each John Doe.  That information will enable ATP to identify the third-party Internet Service Providers ("ISPs") such as Comcast, AT&T, Time Warner Cable, and Charter Cable, and the Online Service Providers ("OSPs") such as Google and Yahoo, used by the John Does when making their postings.[5]  Id., p. 2.  ATP then seeks to serve the subpoenas on the ISPs and OSPs to obtain documents that will identify the John Does.  Id.  ATP sought this information on an expedited basis because the identifying information possessed by the ISPs and OSPs is typically subject to automatic destruction and once the ISPs and OSPs discard their logs and records relating to the John Does, ATP will have no ability to learn their identity.  Id., p. 3; Declaration of Richard Ravin, ¶¶ 3-9 (stating that based on his personal knowledge and experience, ISPs typically retain subscriber records for 180 days, although this time period may vary) [Docket No. 16].  ATP has been attempting to obtain from Allnurses the information regarding the IP addresses for the ISPs and OSPs used by the John Does since April, 2015, and are concerned that the information may be unavailable because of the passage of time.  Pls.' Mem., pp. 3-4.

Through the discovery it seeks to re-serve on Allnurses, (Pls.' Mem., Ex. A, (Plaintiffs' First Request for Production of Documents)), ATP sought information on

---

[5]    IP addresses and ISPs are described in Sony Music Entm't Inc. v. Does 1-40 as follows: "Plaintiffs were able to identify Cablevision as the Internet service provider ("ISP") to which defendants subscribed, using a publicly available database to trace the Internet Protocol ("IP") address for each defendant. ISPs own or are assigned certain blocks or ranges of IP addresses.  An ISP assigns a particular IP address in its block or range to a subscriber when that subscriber goes 'online.' An ISP can identify the computer from which the alleged infringement occurred and the name and address of the subscriber controlling the computer when it is provided with a user's IP address and the date and time of the allegedly infringing activity."  326 F. Supp. 2d 556, 568-69 (S.D.N.Y. 2004) (citations omitted).

three groups of individuals: Group 1, comprised of duskyjewel, JustBeachyNurse, LadyFree28, monkeyhq, and Pixie.RN, are John Doe defendants; Group 2, comprised of NRSKarenRN, traumaRUs, Dirl, and Pixie.RN, are employees, workers, volunteers or otherwise agents of Allnurses who have direct contact with ATP or ATP's employees and they are witnesses; and Group 3 is comprised of GRN77, learningisgood, and onesmallchange, who are employees of ATP and their identities are known to ATP. Pls.' Mem., p. 10. ATP wanted this information regarding Group 3 to verify the accuracy of the records maintained by Allnurses and to help ATP understand the recordkeeping and collection of information of Allnurses. Id., p. 11.

ATP anticipated that Allnurses would raise a First Amendment "right of anonymity" objection to providing the discovery. Id., pp. 15-18. As an initial matter, ATP pointed out that defamatory speech is not protected. Id., p. 17. ATP contended that by providing the IP addresses and email addresses of the John Does defendants, Allnurses would not be revealing the identities of anonymous posters, because the IP addresses were merely numbers representing a particular server on the Internet and the email addresses used by members to register on Allnurses are typically pseudonymous. Id., p. 16. Alternatively, to the extent a John Doe used his or her real name as part of an email address, that person was not anonymous and would have no First Amendment right to anonymity. Id.

Moreover, the John Does will have an opportunity to object to the subpoena. According to ATP, after receiving the requested information from Allnurses, the next step will be for ATP to subpoena the ISPs and OSPs for their customers' identifying information. Id. Those companies have standard protocols for notifying their customers

of the requests for information before providing it.  Id.; Declaration of Charles Kramer ("Kramer Decl."), ¶ 3 (stating that Kramer has served as counsel for internet users accused of improper postings and he is aware of standard procedures employed by ISPs and OSPs to notify their customers before providing identifying information responsive to an inquiry or subpoena); Ex. A (Notice by ISP Charter to user that Charter had received a subpoena and advising user of his right to object to the disclosure of his identifying information) [Docket No. 58].  Consequently, if posters want to raise First Amendment objections, they will have the right to do so at that stage.  Id., p. 17.  In short, ATP maintained that any First Amendment concerns could be addressed by the John Does once ATP obtained the information from Allnurses and issued subpoenas to the ISPs and OSPs.  Id.

ATP noted that there was no case law in this District or the Eighth Circuit addressing the rights of anonymous posters, and relevant extra-jurisdictional case law only addressed the issue at the ISP subpoena level.  Id.  For that reason, ATP maintained that one of the leading cases on this issue, Dendrite Int'l, Inc. v. Doe, 342 N. J. Super. 134 (2001), did not apply.  Id.

Allnurses responded that the operative complaint was invalid as a result of Short's death and as a result, there was no reason to address ATP's discovery request,[6] and any event, there was no basis for expedited discovery.  Defs.' Mem., pp.

_____

[6]     At the hearing, the Court heard and granted Plaintiffs' Motion to Substitute Party, and has required that plaintiffs serve and file a Second Amended Complaint on or before January 18, 2016, substituting David R. Smits as Personal Representative for the estate of Brian Short.  Order dated November 24, 2015 [Docket No. 80].  Pursuant to the Pretrial Scheduling Order, Allnurses can serve its Second Amended Complaint or motion to amend the First Amended Complaint no later than January 25, 2016.

2, 8.[7] Allnurses also asserted that the information sought by ATP was protected by the First Amendment principle that "an author's decision to remain anonymous . . . is an aspect of the freedom of speech . . . ." Id., p. 12 (quoting Sedersten v. Taylor, Civ. No. 09-3031, 2009 WL 4802567, at *1 (W.D. Mo. Dec. 9, 2009) (citing McIntyre v. Ohio Elections Comm'n., 514 U.S. 334, 342 (1995)). ATP cited cases describing the various tests that courts outside this District have applied to determine whether it was appropriate to unmask an anonymous internet speaker. Id., pp. 12-13 (citing McVicker v. King, 266 F.R.D. 92, 94-95 (W.D. Pa. 2010), citing Enterline v. Pocono Med. Ctr., 751 F. Supp. 2d 782 (M.D. pa. 2008) (applying four-part test)); In re Lazaridis, 865 F. Supp. 2d 521 (D. N.J. 2011) (requiring a showing of "compelling need" before disclosure of an anonymous internet poster's identity is warranted and quashing a subpoena against a third-party website host); Sedersten, 2009 WL 4802567, at *2 (stating that a party seeking disclosure must clear a "higher hurdle when the anonymous poster is a non-party."); Doe I v. Individuals, 561 F. Supp. 2d 249, 254-55 (D. Conn. 2008) (describing seven-part test); Krinsky v. Doe 6, 159 Cal. App. 4th 1154, 72 Cal. Rptr. 3d 231, 245 (2008) (collecting and analyzing cases); Doe v. Cahill, 884 A.2d 451, 460 (Del. 2005) (finding that disclosure is warranted only if plaintiff provides "facts sufficient to defeat a summary judgment motion."); Dendrite Int'l, Inc. v. Doe, 342 N. J. Super. 134 (2001) (requiring plaintiff to set forth a prima facie cause of action)). Allnurses contended that

---

[7] Defendants also argued that ATP was improperly attempting to obtain discovery by serving subpoenas on parties, which Fed. R. Civ. P. 45 does not contemplate. The Court will not address this argument as it appeared that Allnurses misunderstood plaintiffs' request, which was to obtain the information ATP needed from Allnurses to serve subpoenas on the ISPs and OSPs.

ATP failed to establish a compelling need for the discovery, nor did it establish irreparable harm if it did not obtain the discovery.  Id., p. 13.

Allnurses blamed ATP for waiting too long to seek the information, which undermined its argument that the information was needed on an expedited basis.  Id., p. 14.  Additionally, AllNurses claimed it had standing to assert its clients' First Amendment rights.  Id., p. 15 (citing McVicker, 266 F.R.D. at 95-96.

Allnurses further argued that contrary to ATP's contention, Dendrite applied because ATP had alleged defamation under New Jersey law.  Id., pp. 15-16.  In addition, Allnurses submitted that Dendrite was the leading case on this issue, even where New Jersey substantive law did not apply.  Id., p. 16.

Lastly, Allnurses asked the Court to consider the business harm it will suffer if the identities of its clients were disclosed, as its business model is premised on poster anonymity, including "the real very real possibility that its clients will stop using the Allnurses website for fear of facing similar retribution in the future."  Id., pp. 17-18 (citing Allnurses.com, Inc.'s Privacy Policy, available at http://allnurses.com/privacy-info.html (last visited May 26, 2015) ("**Your privacy on the Internet is of the utmost importance to us**. . . . Under **no circumstances does Allnurses.com, Inc. divulge any information about an individual user to a third party**.") (emphasis in Allnurses's memorandum).[8]

---

[8]     Regarding sharing of information with third parties, the Allnurses's website also states:

> ALLNURSES.COM, INC. uses the above-described information to tailor our content to suit your needs and help our advertisers better understand our audience's demographics. This is essential to keeping our service free.

> We will not share information about individual users with any third party, except to comply with applicable law or valid legal process or to protect the personal safety of our users or the public.

http://allnurses.com/privacy-info.html (last visited December 13, 2015).

In addition, Allnurses's website states that all users of the website are required to agree to the Terms of Service, including the agreement not to "post false, defamatory, name-calling, obscene, or threatening messages."   http://allnurses.com/terms-info.html (last visited December 13, 2015); First Amended Complaint, Ex. A, p. 52.

Further, the Terms of Service states:

**Posting Information**:

Although the Constitution of the US guarantees that "Congress shall make no law abridging the freedom of speech", ALLNURSES.COM, INC is not Congress. Freedom of speech rights do not extend to ALLNURSES.COM, INC. This Terms of Service (Guidelines) governs the behaviors and activities of the members. If you choose not to follow the guidelines agreed to during registration, the result is disabling your account.

You are not allowed to post libelous information about a person, school, instructor, health care facility, or entity. Any post which is violative of any law or is invasive of a person's privacy will be taken down immediately.

*** 

**Information About Others**:

No potentially libelous information about specific schools, instructors, or health care facilities/entities should be posted in these forums. While it is important to be able to network, everyone should be mindful of the following:

1. It is a small world - when we narrow it down to a state and throw in some personal info, there is actually a pretty good chance someone may recognize you if you are not careful. Your privacy is paramount to us.

2. While this site is a wonderful place to vent (without excess personally identifiable details) it is not the place to express why ("x" specific person, place or program) is terrible. Gripe away, but since we cannot permit allegations to be made about named entities, your care in not naming them is very much appreciated.

In reply, ATP emphasized that Allnurses' First Amendment argument was a red herring because ATP was not seeking the identities of the posters, but their IP addresses.  Pls.' Reply, p. 2.  ATP distinguished <u>Dendrite</u>, which involved a request to an ISP for a poster's identity, and not a request for an IP numeric identifier.  <u>Id.</u>  To the extent the Court did consider Allnurses' First Amendment argument, ATP described the false and defamatory statements posted by monkeyhq, JustBeachyNurse, Pixie.RN and LadyFree28, which were described in the First Amended Complaint.  <u>Id.</u>, pp. 3-7 (citing

---

> 3.  Please do not give out personal identifying information about yourself or others. Do not name names where anyone could identify any person in any facility including your nursing programs or place of employment.
>
> ***
>
> **Messages Posted - Responsibility:**
>
> ***
>
> You agree to indemnify and hold ALLNURSES.COM, INC. harmless against any claims asserted by any third parties that allege the Content submitted by you violates the third parties' rights, or from any breach by you of any promises, warranties or representations contained in these Terms of Services. You shall be responsible for any costs incurred by ALLNURSES.COM, INC. for defense or settlement of third party claims, including but not limited to our attorneys' fees.
>
> ***
>
> **Breach of Terms of Service**
>
> ALLNURSES.COM, INC staff reserves the right to edit/remove the posts and/or disable the account of any member who does not comply with these guidelines or any reason deemed appropriate by the administration for the safety and good of the community.
>
> http://allnurses.com/terms-info.html (last visited December 13, 2015); <u>see</u> <u>also</u>, First Amended Complaint, Ex. A, pp. 52-55.

Amended Complaint, ¶¶ 108-115, 126-154, 304-312).   According to ATP, these statements demonstrated the threshold validity of its defamation claim. Id., p. 8.

### D.   Hearing on Motion

At the motion hearing, ATP argued that Allnurses lacked standing to raise the constitutional rights of the John Does.  ATP's counsel also emphasized that any further delay in this matter could be fatal to ATP's efforts to identify the John Does because of the record destruction policies of the ISPs and OSPs.  In response to questioning by the Court, ATP's counsel stated that ATP could forego seeking the identities of the individuals in Groups Two and Three on an expedited basis, but that at a minimum, ATP needed the information sought by Document Request Nos. 1-4 for Group One and Pixie.RN, who was a member of Groups One and Two.  Additionally, although counsel expected that Allnurses would provide a notice to the John Does that ATP was seeking to learn their identity, ATP's counsel suggested that the Court require such notice and further, could require that the ISPs and OSPs provide notice of the type attached as Exhibit A to the Kramer Declaration.

In response to ATP's argument that Allnurses did not have standing to make objections on behalf of the John Does, Allnurses's counsel maintained that Allnurses has jus tertii standing[9] to assert the constitutional rights of its users.  As for the information ATP was seeking, Allnurse's counsel indicated that Document Request Nos. 1-3 sought the identity of the posters from Allnurses, and that Allnurses did not possess

---

[9]   Defendant's counsel cited Sedersten as case of "jus tertii standing."  It is true that in Sedersten, in response to a subpoena, a non-party newspaper opposed a motion to compel the production of documents that would identify its non-party posters on First Amendment grounds.  However, the court was not presented with nor did it decide the issue of standing.

this information, citing the Declarations of Brian Short filed in support of Allnurses's Motion to Dismiss.[10]  [Docket Nos. 18-2, 30-4].  Allnurses's counsel proposed that if this Court ordered Allnurses to identify the IP addresses and subpoenas were served, then Allnurses should be allowed to object to the subpoenas through additional briefing, combined with an evidentiary hearing.

## II.    THE LAW

As background to this Court's decision, it is necessary to provide an overview of the law that has developed to protect anonymous internet speech.

### A.    First Amendment Protection for Anonymous Internet Speech

The First Amendment protects an individual's right to anonymous speech. McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 341–42, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995) ("The freedom to publish anonymously extends beyond the literary realm").  This protection extends to anonymous speech on the Internet.  Reno v. ACLU, 521 U.S. 844, 870, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997) ("There is no basis for qualifying the level of First Amendment scrutiny that should be applied to [the Internet]"); see also, Call of the Wild Movie, LLC v. Does 1-1,062, 770 F. Supp. 2d 332, 348 (D.D.C. 2011) (the First Amendment protects an individual's right to anonymous speech on the Internet); Sedersten, 2009 WL 4802567, at *1-2 ("This First Amendment protection extends to speech via the Internet . . . [t]he Internet is a particularly effective forum for the dissemination of anonymous speech.")  (internal quotation and marks omitted); Best Western Int'l, Inc. v. Doe, Civ. No. 06-1537, 2006 WL 2091695, at *3 (D.

---

[10]    Short's declarations do not state that Allnurses does not possess any identifying information regarding the John Does.  Both do state that the posters are anonymous. [Docket Nos. 18-2, 30-4].

Ariz. July 25, 2006) ("[T]he protections of the First Amendment extend to the Internet."). Courts acknowledge that anonymity is a particularly important component of Internet speech based on the unique ability of the Internet to "facilitate[ ] the rich, diverse, and far ranging exchange of ideas."  Doe v. 2 The Mart.com, Inc., 140 F. Supp. 2d 1088, 1092 (W.D. Wash. 2001).  Thus, "the constitutional rights of Internet users, including the First Amendment right to speak anonymously, must be carefully safeguarded."  Id. at 1097 .

"Although the right to anonymity is 'an important foundation of the right to speak freely,' London-Sire Records, Inc. v. Doe 1, 542 F. Supp. 2d 153, 163 (D. Mass. 2008), the right to free speech is not absolute, and certain classes of speech, such as defamation, libel, and obscenity, for example, are deemed to be beyond the purview of the First Amendment."  Call of the Wild Movie, 770 F. Supp. 2d at 348 (citing Chaplinsky v. New Hampshire, 315 U.S. 568, 571, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) ("[T]he right of free speech is not absolute at all times and under all circumstances.  There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem."). See also, Best Western, 2006 WL 2091695, at *3 ("[T]he right to speak anonymously is not absolute.  See, McIntyre, 514 U.S. at 353; Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 59, 555–56 (1985) (First Amendment does not protect copyright infringement); Cahill, 884 A.2d at 456 ('Certain classes of speech, including defamatory and libelous speech, are entitled to no constitutional protection.')")).  Thus, "[t]hose who suffer damages as a result of tortious or other actionable communications on the Internet should be able to seek appropriate redress by preventing the wrongdoers from

hiding behind an illusory shield of purported First Amendment rights." In re Subpoena Duces Tecum to America On–Line, Inc., No. 40570, 2000 WL1210372, at *5 (Va. Cir. Ct. Jan. 31, 2000) (reversed on other grounds, America Online v. Anonymously Publicly Traded Co., 542 S.E.2d 377 (Va. 2001)).

### B.   Dislosure of Anonymous Poster's Identity

The Internet free speech cases arise in highly context-specific situations, in which courts factor in the issues presented – such as alleged copyright infringement or defamation, or whether the speech at issue is commercial speech  – to determine the standards applicable to a First Amendment analysis regarding the Internet posters' right to anonymity and the quantum of evidence required to overcome a First Amendment claim.   See e.g, Call of the Wild Movie, 770 F. Supp. 2d at 349-350 (noting that copyright infringement is not protected under the First Amendment, and illegal file sharers' First Amendment rights, though "exceedingly small," must be considered because file sharing is an expressive activity) (citation omitted); Arista Records v. Does 1-19, 551 F. Supp. 2d 1, 8 (D.D.C. 2008) (distinguishing between "actual speech" and file sharing, which resulted in alleged copyright infringement and was, therefore, less deserving of First Amendment protection); Sony Music Entm't, Inc., 326 F. Supp. 2d at 564 (file sharing does not deserve the broadest First Amendment protection afforded to political expression, but is entitled to limited protection).

Further, some cases involve the disclosure of John Does who are third party witnesses to events , whereas others seek the disclosure of the identity of John Does to name them as defendants, as is the case here.  A party seeking the disclosure of the identity of a non-party witness must clear a higher hurdle.  Lazaridis, 865 F. Supp. 2d at

528 (absent a showing of compelling need, a non-party poster's privacy should be protected); <u>McVicker</u>, 266 F.R.D. at 95 (noting that the party seeking disclosure must clear a higher hurdle if the poster is a non-party witness and finding that plaintiff failed to show that the identifying information was directly relevant to a claim or defense or, to the extent plaintiff sought the information for impeachment, that it was not available from other sources.); <u>Sedersten</u>, 2009 WL 4802567, at *2 (noting this higher standard and commenting "[t]his makes sense because litigation can, in most circumstances, go forward without the disclosure of the identity of a non-party witness.") (citation omitted); <u>Enterline</u>, 751 F. Supp. 2d at 787-788 (applying a balancing test to determine if the need for discovery outweighs the First Amendment rights of non-party posters to anonymity).

In some cases, the entity from whom the identities of the anonymous posters were sought were newspapers, and the newspapers stepped forward to assert the First Amendment rights of their posters.  <u>See</u>, <u>Trawinski v. Doe</u>, Civ. No. L-8026-12, 2015 WL 3476553, at *4-5 (N.J. Super. June 3, 2015) (on-line news provider has standing to assert the constitutional rights of its users and noting: "[o]ther jurisdictions have held 'that entities such as newspapers, internet service providers, and website hosts may, under the principle of <u>jus</u> <u>tertii</u> . . . standing, assert the rights of their readers and subscribers.'") (quoting <u>McVicker</u>, 266 F.R.D. at 95); <u>In re Indiana Newspapers, Inc.</u>, 963 N.E.2d 534, 549 (Ind. Ct. App. 2012) (holding that a newspaper had standing to argue First Amendment issues on behalf of an anonymous on-line commentator on its website); <u>Sedersten</u>, 2009 WL 4802567, at *1-3; <u>Enterline</u>, 751 F. Supp. 2d at 785-86

(newspaper has standing to assert the First Amendment rights of its anonymous posters).

Courts have applied several different standards throughout these highly context-specific cases to determine whether a party's need to discover the identity of the anonymous poster outweighs the individual's First Amendment right to remain anonymous. These tests range from the extremely easy (e.g., merely requiring that a plaintiff describe a good faith basis for its claims) to the more difficult, (e.g. requiring the plaintiff to show that it could survive a motion for summary judgment). See, In Re Anonymous Online Speakers, 661 F.3d 1168, 1175-1176 (9th Cir. 2011) (describing the various tests and gathering cases); In re Does 1-10, 242 S.W.3d 805, 821 (Tx. Ct. App. 2007) (endorsing the "summary judgment standard test" described in Cahill and noting that "other courts have recognized a range of possible showings—'ranging (in ascending order) from a good faith basis to assert a claim, to pleading sufficient facts to survive a motion to dismiss, to a showing of prima facie evidence sufficient to withstand a motion for summary judgment and, beyond that, hurdles even more stringent.") (citations omitted). The summary judgment test "elevates the bar to disclosure to the highest level."[11] In Re Anonymous Online Speakers, 661 F.3d at 1171.

---

[11]   It is noteworthy that the speech at issue in Cahill was political speech, and the Ninth Circuit found that this bar was simply too high in the context of the speech at issue, which involved non-competition and non-solicitation provisions in commercial contracts. In Re Anonymous Online Speakers, 661 F.3d at 1176-77. The court noted that "[t]he nature of the speech should be a driving force in choosing a standard by which to balance the rights of anonymous speakers in discovery disputes . . . for example, in discovery disputes involving the identity of anonymous speakers, the notion that commercial speech should be afforded less protection than political, religious, or literary speech is hardly a novel principle." (internal citations omitted) (citing Lefkoe v. Jos. A. Banks Clothiers, Inc., 577 F.3d 240, 248 (4th Cir. 2009) (as the speech in question is of a commercial nature it "enjoys less First Amendment protection")).

Significantly, none of the cases cited or discussed above involved the facts at issue in ATP's motion for expedited discovery. All of the cases involved discovery directed to entities that could, in fact, disclose the identities of the anonymous Internet posters. Here, ATP seeks to discover from Allnurses the IP addresses of the John Does, which will then allow ATP to go to the ISPs and OSPs to discover the identifying information for each John Doe. Consequently, this "one step removed" posture raises the question of Allnurses's standing, since it does not actually possess the identifying information of the John Does.

### C.   Standing to Assert the Constitutional Rights of the John Does

Allnurses contended that it has jus tertii standing to assert the rights of its posters. ATP disagrees.

"[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth v. Seldin, 422 U.S. 490, 499, (1975) (citing Tileston v. Ullman, 318 U.S. 44 (1943); United States v. Raines, 362 U.S. 17 (1960); Barrows v. Jackson, 346 U.S. 249, (1953)). "Federal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation." Singleton v. Wulff, 428 U.S. 106, 113 (1976). The rationale for this principle is twofold. First, courts "should not adjudicate such rights unnecessarily, and it

---

The Ninth Circuit specifically declined to decide whether the speech at issue was commercial speech. Id. at 1177. Moreover, even though the Ninth Circuit stated that the district court should not have applied the Cahill test under the circumstances, the court stated that it was not clear error to do so and if there was "error at all, it was an error with no consequences." Id.

may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not." Singleton, 428 U.S. at 114 (citing Ashwander v. TVA, 297 U.S. 288, 345-348 (1936) (Brandeis, J., concurring) (the standing requirement is one means by which courts avoid unnecessary constitutional adjudications)).   Second, third parties themselves are usually the best proponents of their own rights.  Id.  "The courts depend on effective advocacy, and therefore should prefer to construe legal rights only when the most effective advocates of those rights are before them.  The holders of the rights may have a like preference, to the extent they will be bound by the courts' decisions under the doctrine of stare decisis."  Id. (citing Baker v. Carr, 369 U.S. 186, 204 (1962) (standing requirement aimed at "assur(ing) that concrete adverseness which sharpens the presentation of [the] issues upon which the court so largely depends"); Holden v. Hardy, 169 U.S. 366, 397 (1898) (assertion of third parties' rights would come with "greater cogency" from the third parties themselves)).

There are situations, however, where "competing considerations outweigh any prudential rationale against third-party standing," resulting in the relaxation of "the prudential-standing limitation where such concerns are present."  Secretary of State of Md. v. Joseph H. Munson Co., 467 U.S. 947, 956 (1984).  For example, "[w]here practical obstacles prevent a party from asserting rights on behalf of itself . . . the Court has recognized the doctrine of jus tertii standing.  In such a situation, the Court considers whether the third party has sufficient injury-in-fact to satisfy the Art[icle] III case-or-controversy requirement, and whether, as a prudential matter, the third party can reasonably be expected properly to frame the issues and present them with the

necessary adversarial zeal." Id. (citing Craig v. Boren, 429 U.S. 190, 193–194 (1976)). See also, Flittie v. Solem, 827 F.2d 276, 280 (8th Cir. 1987) ("Jus tertii is based on the theory that a third party having rights is unable to claim a violation of those rights. Thus, another can gain standing to assert those rights on behalf of the third party.") (citing Rhodes v. Robinson, 612 F.2d 766, 769 (3d Cir. 1979)).

The courts in Enterline,[12] McVicker, Indiana Newspapers and Trawiniski all addressed jus tertii standing, but in all of those cases, the entity asserting constitutional claims on behalf of others were newspapers or online news providers that actually possessed the personal identity information of anonymous Internet posters.

Enterline involved a suit by an employee against a hospital alleging sexual harassment and retaliation. The newspaper published an article about the suit, and several people posted comments on the newspaper's website claiming to have personal knowledge of the parties or the facts at issue in the suit. Enterline, 751 F. Supp. 2d at 783. The employee served a subpoena on the newspaper demanding documents that would reveal the posters' identities. Id. In response to the employee's argument that the newspaper lacked standing to assert the First Amendment rights of the anonymous posters, the newspaper argued that forcing it to reveal the identities of its on-line posters would harm the newspaper's online forums, reduce reader interest and harm advertising revenues. Id. at 786. The court concluded that the newspaper had established an injury-in-fact and would zealously argue and frame the issues framed by the motion. Id., at 786-87. The court also determined that the anonymous posters faced practical obstacles to asserting their own First Amendment rights because they

---

[12]     Enterline did not explicitly refer to the standing at issue as "jus tertii," but this is clearly what the court was addressing.

had made comments about individuals with whom they may need to maintain a friendship or working relationship in the future, and if the posters had to reveal their identities, they would risk damaging those relationships. Id. On these facts, the court concluded that the newspaper had standing.

McVicker was an employment action against the Borough of Jefferson Hills and certain council members in which the plaintiff claimed he had been unlawfully terminated in violation of Title VII, the Age Discrimination in Employment Act, the First Amendment and other federal and state statutes. 266 F.R.D. at 93. In support of his claims of retaliation and discrimination due to political affiliation, the timing of when the council members became aware that he had filed an EEOC claim and made the decision to terminate plaintiff was at issue. Id. Plaintiff maintained that a number of anonymous bloggers posted discussions regarding the government activities of the Borough on an interactive discussion board owned by Trib Total Media, Inc. ("Trib") during the time period in which he believed defendants were about to take an adverse employment action against him. Id. Consequently, plaintiff served a subpoena on non-party Trib seeking the disclosure of materials submitted to Trib by the users of seven screen names on the message board, including information that would reveal the posters' true identities. Id. To register with the message board, a user was required to provide their name and other identifying information. Id. Trib refused to comply with the subpoena, contending that the speech at issue was political speech, deserving of protection. Id. at 95. Plaintiff moved to compel and contended that Trib lacked standing. Id. The court summarily rejected that argument, noting that "[t]he trend among courts [that] have been presented with this question is to hold that entities such

as newspapers, internet service providers, and website hosts may, under the principle of <u>jus</u> <u>tertii</u> standing, assert the rights of their readers and subscribers." <u>Id.</u> Then, based on the decision and reasoning of <u>Enterline</u>, the court concluded that Trib had standing to assert the First Amendment rights of the anonymous bloggers. <u>Id.</u> at 96 ("The <u>Enterline</u> court concluded that the relationship between [the newspaper] and readers posting in the [n]ewspaper's online forums is the type of relationship that allows [the newspaper] to assert the First Amendment rights of the anonymous commentators. The court further held that (1) the anonymous commentators to the [newspaper] website face practical obstacles to asserting their own First Amendment rights because doing so would require revelation of their identities; (2) the newspaper itself displays the adequate injury-in-fact to satisfy Article III's case or controversy requirements; and (3) the newspaper will zealously argue and frame the issues before the Court.'") (citing <u>Enterline</u>, 751 F. Supp. 2d at 786-87) (internal quotation marks omitted).

Likewise, the courts in <u>In Re Indiana Newspapers, Inc.</u>, and <u>Trawinski</u> reached the same result based on <u>Enterline</u> and <u>McVicker</u>, finding that a newspaper has <u>jus</u> <u>tertii</u> standing to assert the rights of an anonymous on-line commentator when the true identity of the individual was sought through a subpoena and the newspaper possessed the information. <u>In Re Indiana Newspapers, Inc.</u>, 963 N.E.2d at 549 ("[C]ourts have found that (1) anonymous commenters face practical problems contesting the subpoena themselves, as doing so would require them to reveal their identities; (2) newspapers involved in these types of cases have suffered an adequate injury-in-fact to meet Article III's case or controversy requirements; and (3) the newspaper will zealously argue the issues before the court.") (citing <u>McVicker</u>, 266 F.R.D. at 96; <u>Enterline</u>, 751 F.Supp.2d

at 786); Trawinski, 2015 WL 3476553, at *4-5 (citing McVicker and Indiana Newspapers, Inc.), the court found that an online news provider had standing to contest requests for user identifying information because "(1) anonymous commentators to the [newspaper] website face practical obstacles to asserting their own First Amendment rights because doing so would require revelation of their identities; (2) the newspaper itself displays the adequate injury-in-fact to satisfy. . . case or controversy requirements; and (3) the newspaper will zealously argue and frame the issues before the [c]ourt."). Id. at *5 (quoting McVicker, 266 F.R.D. at 96) (alterations in original)).

Significantly, unlike Enterline, neither McVicker, In Re Indiana Newspapers, Inc., nor Trawinski identified the practical obstacles that the anonymous posters would encounter if they had to reveal their identities to assert their First Amendment rights.

In sum, in examining the question of jus tertii standing in the context of anonymous Internet posters, the court looks at three factors:  (1) whether the posters face practical obstacles preventing them for asserting their rights on behalf of themselves; (2) whether the third-party litigant has suffered an injury-in-fact to satisfy Article III standing; and (3) whether the third-party can reasonably be expected properly to frame the issues and present them with the "necessary adversarial zeal."  Sec'y of State of Md., 467 U.S. at 955.

## III.   DECISION

Court concludes that Allnurses lacks standing to assert any First Amendment rights its posters may have.  In reaching this conclusion, the Court assumes that Allnurses will suffer an injury-in-fact (e.g. loss of use by subscribers, loss of advertising revenue) based on its general representations to users in its privacy policy that it will not

27

disclose any information about users.  The Court also does not doubt that Allnurses (and its experienced counsel) could properly frame the issues and zealously advocate on behalf of the John Does, even though Allnurses does not know the identities of the John Does.

Nonetheless, fatal to Allnurse's attempt to assert the claims on behalf of the John Does is the simple fact that there are no practical obstacles to the John Does asserting their own rights.  In contrast to Enterline, where the very act of asserting their First Amendment rights could jeopardize the anonymous third party posters' continued personal or work relationships with the parties, here, no evidence was presented to suggest that any John Doe will face any obstacle in moving on their own behalf to quash the subpoenas directed to their respective ISP or OSP.  When the subpoenas are served on the ISPs and OSPs, the posters will have notice and an opportunity to object.  As counsel for ATP pointed out at the hearing, in the past he has represented John Does in their objections to such subpoenas, so there is very clearly a mechanism under these circumstances for the preservation of the posters' anonymity through the objection phase.  In fact, in many of the cases reviewed by this Court, objections or motions to quash were filed by anonymous posters.  See, e.g., Arista Records, LLC v. Doe 3, 604 F.3d 110 (2d Cir. 2010) (appeal by anonymous Doe 3 to district court's order denying motion to quash subpoena); Hard Drive Prods. v . Does 1-1,495, 892 F.Supp.2d 334 (D.C.Cir. 2012) (allowing John Does to file under seal objections to subpoenas to ISPs to reveal their identities until the Court resolved their First Amendment objections); Doe I v. Individuals, 561 F. Supp.2d 249, 252 (D. Conn. 2008) (denying motion to quash by Doe 21 filed anonymously); Sony Music Entm't, Inc., 326

F.Supp.2d at 560-561 (describing objections to subpoena filed by counsel for John and Jane Does).

Harking back to the principles and rational articulated by the Supreme Court regarding standing, "third parties themselves are usually the best proponents of their own rights;" courts generally would prefer to have "the most effective advocates of those rights . . . before them;" and presumably, the "holders of the rights" – the John Does – would prefer to assert their own rights, as they "will be bound by the doctrine of stare decisis." Singleton, 428 U.S. at 114. These principles are particularly salient here, where this Court will have to decide which test (i.e., what quantum of evidence should be required at this juncture) to apply to determine whether on balance the First Amendment rights of the John Does should cede to ATP's desire to learn their identity to add them as defendants in this suit. The Court firmly believes that the John Does should have every right and opportunity to frame the analysis that this Court will perform and which will ultimately bind them. After all, if the John Does' identities are revealed, it is them who will be named as defendants in this suit.

For all of these reasons, the Court concludes that Allnurses does not have standing to assert the First Amendment rights of the John Does, and overrules Allnurses's objection to Document Request Nos. 1-4 on that basis. However, the Court will allow Allnurses to participate as amicus curiae in any motion to quash that might be filed by a John Doe, ISP or OSP.

**D.    Expedition of the Discovery**

Pursuant to Rule 26(d)(1) of the Federal Rules of Civil Procedure, "a party may not seek discovery from any source before the parties have conferred as required by

Rule 26(f) except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." If a plaintiff presents sufficient justification for expedited discovery in contravention of Rule 26(d)(1), the court may order that such discovery proceed. Calleros v. FSI Int'l, Inc., Civ. No. 12-2120 (RJK/AJB), 2012 WL 10918867, at *3 (D. Minn. Sept. 17, 2012) (citing Leone v. King Pharms., Inc., Civ. No. 10-230, 2010 WL 4736271 (E.D. Tenn. Nov. 16, 2010) (noting that expedited discovery is not the norm and should only be granted on a showing of necessity, such as a sufficient possibility of threatened irreparable harm) (citations omitted)).

As a preliminary matter, the Court notes that the parties have not only held their Rule 26(f) conference, but the Court has conducted the Rule 16 conference, the Pretrial Scheduling Order has issued, and the parties are now free to engage in discovery. Thus, at this time, the issue is not whether ATP can serve its First Request for Production of Documents on Allnurses; the issue is whether Allnurses should be required to respond to this discovery in less than the 30 days permitted by Rule 34. See Rule 34(b)(2)(A) ("A shorter or longer period [to respond to document requests] may be stipulated to under Rule 29 or be ordered by the Court.") As to Document Request Nos. 1-4, the Court is satisfied that the risk that the information sought by ATP regarding the identity of the John Does will be destroyed by the ISPs and OSPs (if it has not already been destroyed) is too great, and therefore, expedited responses to the discovery is warranted. See Declaration of Richard Ravin, ¶¶ 6-8 (describing the limited amount of time an OSP retains information [Docket No. 16]; Best Western, 2006 WL

2091695, at *1 (noting plaintiff's argument that ISPs only retain information on Internet users for a short period of time).

Accordingly, to the extent that Allnurses possesses the information sought by Document Request Nos. 1-4, Allnurses is required to provide to ATP this information regarding anonymous posters JustBeachyNurse, Pixie.RN, monkeyhq, duskyjewel and LadyFree28 no later than 14 days after service of these document requests on Allnurses.[13]

To insure that the John Does are given adequate notice and a reasonable opportunity to respond to the discovery regarding their identities, at or before the time Allnurses serves its responses to Document Request Nos. 1-4 on ATP, Allnurses must communicate via the same means used by the John Does to make their allegedly defamatory remarks to Allnurses (e.g. via email or the Allnurses website or both) the fact that subpoenas are soon to be served on their respective ISPs or OSPs to obtain their identity, the exact statements purportedly made by each anonymous poster that ATP has alleged is actionable speech, and that each John Doe will have the right to file with this Court a motion to quash the subpoena 21 days after the date the subpoenas are served on their respective ISP or OSP.

Likewise, at the time the subpoenas are served on the ISPs and OSPs, the ISPs and OSPs shall be directed to notify their respective John Doe of the subpoenas and immediately provide a copy of the subpoena and this Order to their respective John Doe, describe the exact statements purportedly made by each anonymous poster that

---

[13]    In the event Allnurses has any objections to this discovery, other than those based on the First Amendment, the Court has put in place an expedited process to address those objections.

ATP alleges is actionable speech, and notify the John Doe they have the right to file a motion to quash the subpoena with this Court within 21 days after the date the subpoenas are served upon the ISP or OSP.  In addition, each ISP and OSP may file a motion to quash the subpoena with this Court within 21 days after the date of service of the subpoena upon it.  Allnurses may participate in any motions to quash as amicus curiae, if it so chooses.

Any motion to quash filed by a John Doe can be filed anonymously by the John Doe or by revealing the name of the John Doe to the Court only for in camera review.

Finally, the ISPs and OSPs must preserve any information responsive to the subpoenas until the Court issues its decision any motions to quash filed with the Court. See, Best Western Int'l, 2006 WL 20091695, at *6; Sony Music Entm't, 326 F. Supp. 2d at 559.

J.S.M.