## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| EAST COAST TEST PREP LLC  d/b/a ACHIEVE TEST PREP  and MARK OLYNYK, | Civil No. 15-3705 (JRT/JSM) |
| Plaintiffs, | |
| v. | **ORDER VACATING THE ORDER OF MAGISTRATE JUDGE DATED DECEMBER 18, 2015 AND DENYING PLAINTIFFS' DISCOVERY MOTION** |
| ALLNURSES.COM, INC.; DAVID R. SMITS, *as Administrator of the Estate of Brian Short*; ABC COMPANIES 1-10; and JOHN DOES 1-10, | |
| Defendants. | |

Charles S. Kramer, **RIEZMAN BERGER, PC**, 7700 Bonhomme Avenue, 7th Floor, Saint Louis, MO  63015; Richard L. Ravin, **HARTMAN & WINNICKI, PC**, 74 Passaic Street, Ridgewood, NJ  07450; and Robert A. Lengeling, **BEITO & LENGELING, PA**, 310 Fourth Avenue South, Suite 1050, Minneapolis, MN 55415, for plaintiffs.

James J. Kretsch, Jr. and John D. Reddall, **KRETSCH LAW OFFICE, PLLC**, 17850 Kenwood Trail, Suite 219, Lakeville, MN  55044, and Keith John Miller and Justin Taylor Quinn, **ROBINSON MILLER LLC**, One Newark Center, 19th Floor, Newark, NJ 07102, for defendants.

Free speech norms have long stood in tension with anti-defamation laws, and this case is but one more chapter in that ongoing saga.  The Court is asked to decide today whether a website may litigate the First Amendment interests of its users, and whether an anonymous speaker's right to anonymity should be protected in the context of discovery.

Neither the Supreme Court nor the Eighth Circuit have provided direction on these issues, and so the Court must tread new ground.  Because the Court finds that Allnurses' users face a hindrance to litigating their own claims, and in light of the growing consensus that parties seeking discovery should attempt to provide website users with notice of a discovery request that would unmask the users' identities, the Court will sustain Allnurses' objections, vacate the discovery order now at issue, and deny ATP's motion to compel.  However, the Court will grant ATP leave to file a renewed motion for discovery in light of the applicable law described in this order.

## BACKGROUND

Plaintiffs are East Coast Test Prep, which does business as Achieve Test Prep, and the company's owner Mark Olynyk (together "ATP").  ATP filed this action naming as defendants Allnurses.com, Inc., the estate of Allnurses' founder, and a number of yet-to-be-named companies and "John Doe" individuals (together "Allnurses").

ATP's business is to prepare nurses for nursing-related exams.  ATP alleges in its complaint that Allnurses is liable for defamatory statements made by pseudonymous users – the John Does named as defendants in this case – in posts on the Allnurses website.  This case is now in the discovery stage.

In October 2015, ATP filed a motion to require Allnurses to produce:

1.      Any and all documents containing the true name of each Poster.

2.      Any and all documents containing the postal or physical address of each Poster.

3.    Any and all documents that contain identification information of any and all of the Posters, including information as to true name, location (including without limitation, residence, work or employer, contact information (including without limitation, address, phone, fax, e-mail).

4.    Any and all IP Address Logs for each and every Poster pertaining to each and every session that said Poster accessed, created, deleted, edited, modified, copied, pasted, uploaded, downloaded, sent, received, transmitted or communicated on or pertaining to Allnurses.com . . . .

(Mem. in Supp. of Pl.'s Mot to Compel, Ex. A ("Req. for Produc.") at 7, Oct. 23, 2015,

Docket No. 57.)

United States Magistrate Judge Jane Mayeron granted the motion on December 18 and issued a written order finding that Allnurses did not have third-party standing to assert the First Amendment interests of the pseudonymous posters because "there are no practical obstacles to the John Does asserting their own rights."  (Order at 28, Dec. 18, 2015, Docket No. 85.)  The Magistrate Judge's order also found that ATP was only seeking the internet protocol ("IP") addresses for the posters and therefore the motion did not implicate the posters' right to speak anonymously, suggesting that even if Allnurses had standing to represent the John Does' interests, no First Amendment interests were implicated.  (*Id.* at 22.)  Allnurses timely objected to the Magistrate Judge's order, arguing these findings were clearly erroneous or contrary to law.  (Defs.' Obj., Jan. 4, 2016, Docket No. 87.)

## ANALYSIS

## I.      STANDARD OF REVIEW

After a magistrate judge issues a written order stating his or her decision on a nondispositive matter, "[a] party may serve and file objections to the order within 14 days after being served with a copy." Fed. R. Civ. P. 72(a). "A party may not assign as error a defect in the order not timely objected to." *Id.* After objections are filed, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*

Here, Allnurses filed timely objections to two parts of the Magistrate Judge's order. First it objects to the Magistrate Judge's finding that Allnurses lacks "*jus tertii*" standing. And second, it objects to the Magistrate Judge's finding that the discovery at issue does not contain any personally identifying information.

The Court will review each finding *de novo* because they involve questions of law.

## II.     OBJECTIONS

### A.      Third-Party Standing

The Court first reviews the order's finding that Allnurses lacks "*jus tertii*" standing. Closely related to the constitutional requirement that a plaintiff must suffer a personal injury to establish standing is the prudential requirement that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). This self-imposed judicial limitation on the exercise of federal jurisdiction serves

dual purposes, as it helps to prevent "the adjudication of rights which those not before the Court may not wish to assert" and seeks to ensure "that the most effective advocate of the rights at issue is present to champion them." *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 80 (1978).  But "since the prohibition against a party asserting the legal rights of another is prudential – not constitutional – the Supreme Court may 'recognize[] exceptions to this general rule.'"  *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 15 (D.D.C. 2010) (alteration in original) (quoting *Coalition of Clergy, Lawyers, & Professors v. Bush*, 310 F.3d 1153, 1160 (9th Cir. 2002)).

One exception the Supreme Court has recognized is "third-party" or "*jus tertii*" standing:  a plaintiff may litigate the interests of a third party where (i) the plaintiff has Article III standing in his own right, (ii) the plaintiff has "a close relation" to the third party, and (iii) there is "some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 411 (1975); *Al-Aulaqi*, 727 F. Supp. at 23.

Here, the parties only dispute whether the third element has been met.  The third element, evaluating the "hindrance" to the third party, "is a question of 'the likelihood and ability of the third parties . . . to assert their own rights.'"  *Hodak v. City of St. Peters*, 535 F.3d 899, 904 (8th Cir. 2008) (alteration in original) (quoting *Powers*, 499 U.S. at 414).  "[A] party must show that some barrier or practical obstacle (e.g., third party is unidentifiable, lacks sufficient interest, or will suffer some sanction) prevents or deters the third party from asserting his or her own interest." *Id.* (alterations in original) (quoting *Benjamin v. Aroostook Med. Ctr., Inc.*, 57 F.3d 101, 106 (1st Cir. 1995)).  A

sufficient hindrance may include possessing only a "small financial stake" in the matter, or facing "the economic burdens of litigation." *Id.* (quoting *Powers*, 499 U.S. at 414-15).

Notably, a plaintiff need only show that a third party faces "**some** hindrance" to attain third party standing – "[the third] party need not face insurmountable hurdles." *Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 291 (3d Cir. 2002) (citing *Powers*, 499 U.S. at 411). "[A]n absolute impossibility of suit" is not necessary to meet the requirement, and "a practical disincentive to sue may suffice," even if "a mere disincentive is less compelling than a concrete impediment." *Id.* at 290 n.14 (quoting 15 James Wm. Moore et al, *Moore's Federal Practice* § 101.51(3)(c) (3d ed. 2015)).

Here, Allnurses argues that it may litigate the interests of the pseudonymous users of its website because they "may not have the financial resources or sophistication" to litigate on their own behalf. (Def.'s Obj. at 10.) The Court is persuaded that this argument is correct. If a user of a website, writing under a username, writes a statement that later ends up the subject of a defamation action, that user is unlikely to come out of the woodwork to defend themselves in a discovery dispute – especially where, as here, all indications suggest the user lacks notice of the underlying action. Litigation is expensive, time consuming, often embarrassing, and something that almost all reasonable people seek to avoid. As the Supreme Court held in *Powers*, that disincentive can be enough of a hindrance to create third-party standing, and such is the case here. The Court therefore finds that Allnurses has third-party standing to litigate its users' interests.

**B.      Personally Identifying Information**

Allnurses next objects to the Magistrate Judge's finding that the John Does' First Amendment interests are not implicated by the order to compel production because it seeks only the discovery of IP addresses.  The Court will sustain this objection.  ATP's discovery request sought production of many forms of personally identifying information:  "documents containing [each John Doe's] true name," "postal or physical address," "location," "residence, work or employer, contact information, address, phone, fax, e-mail," as well as the "IP Address."  (Req. for Produc. at 7.)  Even if the Court were to assume that an IP address is not personally identifying information, everything else in ATP's request is.  ATP's request therefore implicates the John Does' First Amendment interests.

Additionally, the Court finds that an IP address alone is personally identifiable information.  ATP's argument to the contrary is that once armed with the John Does' IP addresses, ATP will have nothing more than a list of numbers, and would still have to subpoena the John Does' internet service providers before learning the names of the persons associated with those numbers.  That may be true, but the Court sees little difference in that chain of events and, for example, the retrieval of a person's phone number, or physical address.  If a plaintiff receives a person's phone number in discovery, the plaintiff may have to subpoena the phone company to learn what human is on the other end.  And the same goes for physical address.  In some cases, it is unclear what person or legal entity owns a particular piece of real property, and even if public records describe real property ownership, the true owners can mask themselves with

holding companies and other means.  Yet it would be absurd to say that a person's phone number or physical address is not typically personally identifying information.  An IP address, a physical address, and a phone number are all modern day hallmarks of how a person may be identified.   Therefore the Court finds that the John Does' First Amendment interests are raised by ATP's discovery requests.

### C.      The First Amendment

Finally, because the Court finds that Allnurses has standing to litigate the John Doe defendants' interests, and that those interests are implicated by ATP's request for production, the Court must confront the merits of Allnurses' First Amendment argument. Allnurses argues that the First Amendment requires the Court to take certain precautions before issuing discovery orders that may unmask an anonymous speaker.  The Court agrees.

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech."  U.S. Const. amend. I.  Accordingly, the Court may not enforce any federal statute with any order, including a discovery order, that abridges the freedom of speech.  *See N.Y. Times Co. v. United States*, 403 U.S. 713, 718-19 (1971) (Black, J., concurring) (stating the First Amendment restricts the federal judiciary).

The Supreme Court has recognized that the freedom of speech extends to anonymous speech.  *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 199-200 (1999).   And while it was not until 1960 that the Supreme Court described protections for anonymous speech, *Talley v. California*, 362 U.S. 60, 64-65 (1960), the

undergirding principles harken back to "a respected tradition of anonymity in the advocacy of political causes," *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 343 (1995). *The Federalist Papers* were written by James Madison, Alexander Hamilton, and John Jay under pseudonyms. *Id.* at 343 n.6. And the Federalists' opponents authored their own papers under the names "Brutus," and "Centinel," and "The Federal Farmer." *Id.* Thus, the Court has stated that "an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment." *Id.* at 342.

The right to speak, however, is not unlimited; Congress may not "abridge" the freedom of speech, but it may regulate it. The line between impermissible abridgment and permissible regulation of speech is not always clear, and to distinguish the two courts apply varying degrees of scrutiny. Court scrutiny is most exacting for laws that discriminate based on the viewpoint of the speaker, *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995), and restrain speakers from speaking, *N.Y. Times v. Sullivan*, 403 U.S. at 714. Certain categories of speech regulation are subject to a lower level of scrutiny – commercial speech regulations, for example. *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2667-68 (2011) (citing *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980)). And other categories of speech, like fighting words and obscenity, fall outside the First Amendment protections altogether. *See, e.g.*, *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942) (holding that fighting words are unprotected speech).

Here, the John Doe defendants' First Amendment rights to speech are squarely implicated by the Magistrate Judge's order – but that does not necessarily mean the discovery order is inappropriate.  The Court must balance the John Doe defendants' right to speak, and to speak anonymously, with the state's interest in regulating defamation and other forms of speech.  The Supreme Court and the Eighth Circuit have not yet provided the Court with direction on this specific issue, but other courts have provided guidance. *See, e.g.*, *In re Anonymous Online Speakers*, 661 F.3d 1168, 1174-76 (9th Cir. 2011); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118-19 (2d Cir. 2010); *Enterline v. Pocono Med. Ctr.*, 751 F. Supp. 2d 782, 787-88 (M.D. Pa. 2008); *Doe v. Cahill*, 884 A.2d 451, 457-58 (Del. 2005); *Dendrite Int'l, Inc. v. John Doe No. 3*, 775 A.2d 756, 760-61 (N.J. App. Div. 2001); *see also* Nathaniel Gleicher, *John Doe Subpoenas:  Toward a Consistent Legal Standard*, 118 Y.L.J. 320, 362-64 (2008) (proposing a test).

These courts have formed a basic consensus about how a court should protect rights to anonymous speech in the context of a request for production:  First, the party seeking discovery of the information that might unmask the anonymous speaker must make reasonable efforts to notify the speaker by, for example, attempting notice via the same medium used by the speaker to send or post the at-issue message.  *Doe I v. Individuals*, 561 F. Supp. 2d 249, 254 (D. Conn. 2008); *Dendrite*, 775 A.2d at 760; *see also* Gleicher, 118 Y.L.J. at 363.  This requirement gives the speaker the opportunity to seek to quash the discovery request on their own.  *Doe I v. Individuals*, 561 F. Supp. at 254.  Second, the plaintiff must produce prima facie support for all of the elements of his or her case that are within his or her control.  *Arista Records*, 604 F.3d at 119; *Doe I v.*

- 10 -

*Individuals*, 561 F. Supp. 2d at 255-56; *Highfields Capital Mgmt. L.P. v. Doe*, 385 F. Supp. 2d 969, 976 (N.D. Cal. 2005). "Requiring at least that much ensures that the plaintiff is not merely seeking to harass or embarrass the speaker or stifle legitimate criticism." *Krinsky v. Doe 6*, 72 Cal. Rptr. 3d 231, 245 (Ct. App. 2008). Third, the Court must consider whether the plaintiff has identified specific statements made by the anonymous speakers and consider "whether there is an alternative means of obtaining the information." *Doe I v. Individuals*, 561 F. Supp. 2d at 255; *see also Dendrite*, 775 A.2d at 760. Fourth and finally, if the above factors do not make it abundantly clear, the Court must determine whether the "party seeking discovery has 'demonstrated an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right.'" *Perry v. Schwarzenegger*, 591 F.3d 1147, 1164 (9th Cir. 2009) (alterations in original) (quoting *NAACP v. Alabama*, 357 U.S. 449, 463 (1958)); *see also Dendrite*, 775 A.2d at 760-61; Gleicher, 118 Y.L.J. at 363.

Here, ATP has not yet met the first requirement of this test. None of the papers before the Court indicate that ATP attempted to provide the John Doe defendants with notice of ATP's discovery request.[1] The Court therefore finds that plaintiffs have not yet met their burden in ensuring that the requested discovery order would not abridge the freedom of speech. The Court will deny ATP's motion, and invite ATP to file a

---

[1] ATP takes care to note that Allnurses has not attempted notice – but the cases do not require Allnurses to do so.

subsequent motion – if the company wishes – to attempt compliance with above-stated law.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **SUSTAINS** Allnurses' objection [Docket No. 87] and **VACATES** the Order of the Magistrate Judge [Docket No. 85].   Accordingly, **IT IS HEREBY ORDERED** that ATP's Motion to Compel Responses to Previously Served Discovery and to Allow Immediate Discovery and to Shorten Time for Response [Docket No. 56] is **DENIED**.

**IT IS FURTHER HEREBY ORDERED** that ATP is granted leave to file a renewed motion for discovery.

DATED:  March 7, 2016
at Minneapolis, Minnesota.

s/ John R. Tunheim

JOHN R. TUNHEIM
Chief Judge
United States District Court