# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

---

EAST COAST TEST PREP LLC d/b/a
Achieve Test Prep and MARK OLYNYK,

                Plaintiffs,

v.

ALLNURSES.COM, INC., ABC
COMPANIES 1-10, JOHN DOES 1-10,
DAVID R. SMITS, as Administrator of
the Estate of Brian Short, LISA DUKES,
and UHURA RUSS,

                Defendants.

Civil No.  15-3705 (JRT/SER)

**MEMORANDUM OPINION
AND ORDER GRANTING
MOTION TO DISMISS AND
RENEWED MOTION FOR
JUDGMENT ON THE PLEADINGS**

---

Richard L. Ravin, **HARTMAN & WINNICKI, P.C.**, 74 Passaic Street, Ridgewood, NJ  07450, and Paul A. Grote, **RIEZMAN BERGER, P.C.**, 7700 Bonhomme Avenue, Seventh Floor, Saint Louis, MO  63105, for plaintiffs.

John D. Reddall and James J. Kretsch, Jr., **KRETSCH LAW OFFICE, PLLC**, 17850 Kenwood Trail, Second Floor, Lakeville, MN  55044, and Keith J. Miller and Justin T. Quinn, **ROBINSON MILLER LLC**, One Newark Center, Nineteenth Floor, Newark, NJ  07102, for defendants.

This sprawling case is about defamation:  a test prep company has sued a nursing discussion forum and five of its users for their mildly disparaging remarks about the company's offerings.  Plaintiffs are East Coast Test Prep LLC, doing business as Achieve Test Prep, and its president Mark Olynyk (collectively, "ATP").  Defendants are Allnurses.com and David Smits (administrator of the estate of company founder Brian Short) (collectively, "Allnurses") and users Lisa Dukes and Uhura Russ.

ATP claims that "Allnurses secretly schemed to have false statements posted about ATP, using ATP's trademark, thereby attracting potential ATP customers to the site, only to be scared away from using ATP, and being driven to ATP's competitors." (Mem. Opp. Renewed Mot. J. Pleadings ("Opp. J. Pleadings") at 2, July 24, 2017, Docket No. 387.)  ATP alleges few specific facts in support of these allegations, and despite two years of trying it has discovered virtually no evidence that they are true.  As such, its case quickly deflates into a routine defamation action – one in which most of the statements at issue are not defamatory, and in which the website enjoys immunity against defamation claims related to third-party content.

Two motions are now before the Court.  The first is a motion to dismiss brought by one of the users, Lisa Dukes.  (Dukes Mot. to Dismiss, June 28, 2017, Docket No. 357.)  The second is a renewed motion for judgment on the pleadings brought by Allnurses.  (Renewed Mot. J. Pleadings, June 28, 2017, Docket No. 363.)  Because the majority of ATP's claims against Dukes and Allnurses are not plausibly alleged and there is no genuine dispute of material fact as to the others, the Court will grant both motions, converting them to motions for summary judgment as necessary.

## BACKGROUND

## I.     THE PARTIES

Plaintiff East Coast Test Prep LLC is a New Jersey corporation doing business as Achieve Test Prep.  (Third Am. Compl. ("Compl.") at 1, Jan. 24, 2017, Docket No. 268.) Plaintiff Mark Olynyk owns East Coast Test Prep and lives in New Jersey.  (*Id.* ¶¶ 2, 26.)

Defendant Allnuses.com, Inc., is a Minnesota corporation operating the website http://www.allnurses.com, which describes itself as "the collective voice of the nursing community." (*Id.* ¶¶ 3-4, 39.) Brian Short was the founder, administrator, and president of Allnurses until his death on September 10, 2015. (*Id.* ¶¶ 5-7.) Defendant David R. Smits is the administrator of Brian Short's estate. (*Id.* ¶ 7.)

Defendant Lisa Dukes was a "Senior Moderator" of the Allnurses.com forums during the time period at issue and remains an active user under the name Pixie.RN. (*Id.* ¶¶ 17, 112.) She has posted an average of 111 times per month during her nearly ten years on the forum and authored 32 articles on the Allnurses site. (*Id.* ¶¶ 157-60.)

## II.     FACTUAL BACKGROUND

Allnurses operates discussion forums where registered users can post comments and "Like" other users' comments. (Compl. ¶¶ 42-45, 152.) The registration page states that signing up "implies full acceptance with our Terms of Service." (*Id.* ¶ 88.) The site's terms of service ("TOS") state, among other things, that Allnurses will "promote the idea of lively debate," but that users "are not allowed to post libelous information," that "[n]o potentially libelous information about specific schools, instructors, or health care facilities/entities should be posted in these forums," and that "[a]ny post which is violative of any law . . . will be taken down immediately." (*Id.* ¶¶ 88, 98.)

At issue is a discussion thread in the "Excelsior College Online Nursing" forum, titled "Achieve Test prep…. anyone?" ("the Thread"). (*Id.* ¶¶ 63-64.) The Thread, which contains an extended discussion about the merits of ATP's services for Excelsior

College students, was created in February 2013; by March 2015 it had 33,875 views and 88 comments, and by October 2016 it had 81,964 views. (*Id.* ¶¶ 125-29.)

Comments[1] by users Pixie.RN, JustBeachyNurse, monkeyhq, duskyjewel, and LadyFree28 are the primary subject of this case. These comments fall into three categories: first, that Excelsior College "warns" students about third-party test prep companies; second, that third-party test prep services, including ATP's, are or will be "redundant" or "obsolete"; and third, that ATP was or is under federal investigation.

ATP alleges that all five users were compensated by Allnurses for their participation on the forum. (*Id.* ¶¶ 59, 254-55.) It alleges that Dukes, as Senior Moderator Pixie.RN, was "in charge" of the Thread. (*Id.* ¶¶ 114-15.) The only specific fact it alleges as to the other four users is their high posting frequency. (*See id.* ¶¶ 237-46, 251-53). ATP does point to a TOS provision stating that:

> [Allnurses] may, from time to time, request that you and others submit articles or other Content for publication . . . as part of contests or other requests that provide payment to you or give you the chance to be paid, give you recognition or allow you to receive other benefits of publicity.

(Compl. ¶ 99, Ex. A at 47, Docket No. 268-2.) But the remainder of the provision is focused on ensuring that Allnurses, not the user, retains rights in such content. (*Id.*) Finally, ATP alleges that duskyjewel and monkeyhq were "insiders" that had a "special

---

[1] ATP alleges that a user's "Like" of a post is also an actionable statement because it is "interpreted by the online community as a show of support and endorsing the post." (Compl. ¶ 153.) When a senior moderator like Dukes "Likes" a post, ATP alleges, "it is interpreted by the online community as endorsing and approving of the post on behalf of Allnurses, and lending credibility to the statements stated therein, including, without limitation, facts and implied facts set forth in such posts." (*Id.* ¶ 154).

relationship" with Allnurses.  (Compl. ¶¶ 249-50.)  It offers no specific facts in support of this allegation other than that two users quit posting after ATP sent Allnurses a demand letter describing their posts as defamatory.  (*Id.* ¶¶ 245-48.)

### A.     "Warns"

The Thread was started on February 12, 2013, by a user soliciting opinions about ATP.  (Compl. ¶ 65, Ex. G at 1.)  JustBeachyNurse was the first to reply, comparing ATP favorably to competitors but warning of its high cost.  (*Id.* at 2.)

On the same day the Thread was posted, Dukes (as Pixie.RN) posted:  "EC **warns** students about third-party publishers and test prep companies -- they are not affiliated with EC, nor does EC endorse their use (http://www.excelsior.edu/about-test-...ation-services)."  (Compl. ¶ 183 (emphasis added).)  She did not reference ATP by name.  (*Id.*)

An Internet Archive capture of the linked page ("the Advisory page") from January 16, 2013 – less than a month before the "warns" post – shows that it was titled "About Test Preparation Services," that it was accessed via a link on the sidebar titled "Exam Preparation Advisory," and that it stated:

> There are test-preparation companies that will offer to help you study for our examinations.  Some may imply a relationship with Excelsior College and/or make claims that their products and services are all that you need to prepare for our examinations.
>
> **Excelsior College is not affiliated with any test preparation firm and does not endorse the products or services of these companies.  No test preparation vendor is authorized to provide admissions counselling or academic advising services, or to collect any payments, on behalf of**

**Excelsior College. Excelsior College does not send authorized representatives to a student's home.**

Depending upon your individual learning style and needs, you may consider using the services and products of a test preparation vendor to help you prepare for an Excelsior College Examination. Some students have found such materials beneficial while others have not. The decision to purchase the services and products of any of these vendors is entirely up to you.

**Excelsior College does not review the materials provided by test preparation companies for content or compatibility with Excelsior College Examinations.**

(Decl. of John Reddall Supp. Dukes's Mot. to Dismiss ("Reddall Decl.") ¶ 2, Ex. A at 1, June 28, 2017, Docket No. 360 (emphasis in original).)[2]

## B.    "Redundant" and "Obsolete"

After one response to the "warns" post, the Thread went quiet. It was five months until the next post, and more than two months until the next post after that. (Compl. ¶ 65, Ex. G at 4-5.) The latter was favorable to ATP, sparking a week-long discussion about the merits and costs of test prep companies. (*Id.* at 4-7.) After another lull, conversation resumed in a similar vein the following February. (*Id.* at 8-12.)

_____

[2] User monkeyhq posted an excerpt from an updated version of the Advisory page to the Thread on September 9, 2014:

> Excelsior College provides its students with the resources and support necessary to successfully complete its associate degree in nursing program. In response to numerous questions from students, please know that in no way is Excelsior College affiliated with any test preparation company. We do not promote, endorse, review or approve the products these customers offer.

(Compl. ¶ 65, Ex. G at 14.) ATP does not allege that monkeyhq misquoted the Advisory page, though it does note that the post was edited on February 7, 2015. (*See id.* at 15.)

After the February exchange, there were no posts in the Thread until August 22, 2014, when user hardworkingrn2 revived it to extoll the virtues of ATP:

> ATP's classes provide the structure and visual learning that so many people need to be successful. The classes are taught by RN's whose personal knowledge and experience can be a great support system during this journey. I find that the best investment is always whatever is going to help you be most successful in reaching your goals.

(*Id.* at 12.) A moderator edited the post to remove a link that violated the TOS. (*Id.*)

The next post was by JustBeachyNurse, who wrote: "ATP and similar services will be **redundant** as of July 1, 2014 [sic] when all challenge exam candidates will be mandated to take the Excelsior online exam prep classes prior to becoming eligible to sit the challenge exams." (Compl. ¶¶ 134, 139 (emphasis added).) User monkeyhq "Liked" this comment and referenced it in a follow-up, writing that "Test Prep companies for Excelsior Exams will be **obsolete** by July 1, 2015 . . . it is a total waste of your investment." (*Id.* ¶¶ 132, 135-36 (emphasis in original).)

Dukes, as Pixie.RN, "Liked" monkeyhq's comment. (*Id.* ¶ 132.) ATP alleges that a "Like" by Senior Moderator Pixie.RN "is tantamount to an endorsement or certification . . . on behalf of Allnurses (which holds itself out as fair and impartial), that what is stated in the post is factually correct." (*Id.* ¶ 167.) As such, ATP alleges, "Liking" monkeyhq's post "in effect ratified, restated and republished the statements" therein, and the action "would be interpreted by a reasonable person with ordinary intelligence as Pixie.RN and Allnurses endorsing, approving, and vouching for the truthfulness of the statements contained in the post." (*Id.* ¶¶ 169, 174.) ATP concedes

-7-

that "only one word was posted" but alleges that it represents "her unqualified agreement and approval" of the monkeyhqpost.  (*Id.* ¶ 173.)  It even alleges that the "Like" also represents "implied endorsement and approval" of the JustBeachyNurse post referenced in the monkeyhq post.  (*Id.* ¶¶ 175-76.)

The next post was made on September 4, 2014, by user GRN77, who stated that "Test prep will no longer be available for Nursing classes but will continue to still be available for all Gen eds."  (Compl. ¶ 65, Ex. G at 13.)  GRN77 was an ATP employee. (Compl. ¶ 95.)  Other posts show that ATP was ending enrollment in nursing classes for new students in response to a change in Excelsior College policy.  (Compl. ¶ 65, Ex. G at 14-18.)  ATP levies no allegations as to those statements.

## C.    "Investigation"

On September 11, one week after GRN77's post, she[3] reached out to Allnurses to inquire as to whether she could participate in the Thread.  (Compl. ¶ 265.)  An administrator replied the next day, informing her that participation was "perfectly acceptable . . . as long as it stays within Terms of Service."  (*Id.* ¶ 266.)  ATP president and owner Mark Olynyk had also registered an Allnurses account, using the username learning-is-good.  (*Id.* ¶ 28.)  His first post in the Thread was on September 11, and it sparked a two-day debate that comprises more than half of the Thread's discussion. (Compl. ¶ 65, Ex. G at 19-40.)

---

[3] (*See id.* at ¶ 270 ("GRN77 logged into **her** Allnurses account" (emphasis added)).)

As part of that back-and-forth debate, LadyFree28 responded to a series of posts about a competing test prep company that was under federal investigation, quoting a post by learning-is-good and responding:

> But the discussion is about THIS particular test-prep program that IS being investigated by the federal government and is under a current lawsuit; there are too many forums that have stated the Achieve "deceived" them with their practices, that is the MAIN focus of this discussion, NOT "other test prep companies."

(Compl. ¶ 187.)  The next post was by duskyjewel, quoting a post by learning-is-good and responding:  "Sounds like you should be scared. TCN + Achieve equals more than one [company under federal investigation]."  (*Id.* ¶ 198.)  No defendants dispute that the statements about ATP being under federal investigation were incorrect.

On September 16, the Thread was closed to new comments.  (Compl. ¶ 270.)  An administrator told learning-is-good in a private message that it had been closed because "There was a lot of misleading information and instead of trying to clarify, it was just a circular discussion.  The thread had multiple reports by members including reports of personal confrontation."  (*Id.* ¶ 274.)  Another ATP employee (under the username onesmallchange) attempted to post comments about ATP on another thread, which were deleted, and the user was eventually banned.  (*Id.* ¶¶ 276-84.)

## D.    Other Claims

ATP alleges "upon information and belief" but without factual support that users were paid to post by Allnurses, its management, and/or the ABC Company defendants – impliedly Allnurses advertisers, including Excelsior.  (*Id.* ¶¶ 237-64.)

Finally, ATP alleges that an "Open Letter" Allnurses published to its website on September 12, 2016, is defamatory. (*Id.* ¶¶ 351, 391.) The Open Letter called this action "meritless litigation" and stated that ATP "has demanded that Allnurses turn over any personally identifying information in its possession regarding the users named in the Complaint." (*Id.* ¶¶ 354, 357.) ATP alleges that the letter did not "fully, fairly and accurately" describe the case, argues that its litigation is not meritless, and insists that it sought only particular, not "any," identifying information.[4] (*Id.* ¶¶ 356, 359, 363-66.)

## III.    PROCEDURAL BACKGROUND

ATP filed this action in New Jersey state court in November 2014, alleging defamation, false light, and tortious interference with prospective economic relations under New Jersey state law, and soon thereafter added libel, breach of contract, consumer fraud, and trademark claims. (Notice of Removal ¶¶ 1-4, May 7, 2015, Docket No. 1.) Allnurses removed the case to the United States District Court for the District of New Jersey based on the Lanham Act trademark claim, and filed a motion to dismiss for lack of personal jurisdiction. (*Id* at 1; Allnurses' Mot. to Dismiss at 1-2, June 4, 2015, Docket No. 18.) The New Jersey District Court agreed that it lacked jurisdiction, but transferred the case instead of dismissing it. (Order at 4, 6-9, Aug. 28, 2015, Docket No. 41.)

ATP commenced discovery upon arrival in Minnesota. (Mot. to Compel, Oct. 23, 2015, Docket No. 56.) Soon thereafter, Allnurses filed a second motion to dismiss, this

---

[4] "ATP did not make discovery demands for Social Security Numbers, Driver's License numbers, credit card and bank account numbers or any other personally identifying information except as stated above." (Compl. ¶ 366.)

time asserting that ATP failed to state a claim. (Allnurses' 2d Mot. to Dismiss at 2, Jan. 25, 2016, Docket No. 98.) Because that motion to dismiss was Allnurses' second, and successive Rule 12(b) motions to dismiss are not permitted except to raise a subject matter jurisdiction defense, the Court denied it. *E. Coast Test Prep LLC v. Allnurses.com, Inc.* (*Sept. 2016 Order*), No. 15-3705, 2016 WL 5109137, at *4 (D. Minn. Sept. 19, 2016). Noting that strict adherence to the rule "may appear to be nothing more than annoyance" but was nonetheless mandatory, the Court welcomed Allnurses to file a Rule 12(c) motion for judgment on the pleadings when the pleadings closed. *Id.* at *2, *4. With discovery well underway and the matter robustly briefed, the Court anticipated that "no additional briefing [would be] necessary." *Id.* at *4.

The next month, Allnurses filed its Answer and Motion for Judgment on the Pleadings. (Ans., Oct. 3, 2016, Docket No. 185; Mot. J. Pleadings, Oct. 4, 2016, Docket No. 186.) The motion was denied because ATP had not yet served the Doe Defendants, nor had they filed answers; as such, the pleadings (though running concurrently with discovery) were not closed. *E. Coast Test Prep LLC v. Allnurses.com, Inc.* (*Dec. 2016 Order*), No. 15-3705, 2016 WL 7383309 (D. Minn. Dec. 20, 2016). On January 24, ATP filed the Third Amended Complaint. (Compl.) ATP also filed a series of motions to compel discovery related to the John Doe users, and litigation over those motions ran into 2017. (*See* Mot. to Compel, Sept. 8, 2016, Docket No. 167; Mot. to Compel, Sept. 12, 2016, Docket No. 172; Mot. to Compel, Feb. 16, 2017, Docket No. 295.)

In July 2017, the Magistrate Judge determined that a renewed motion for judgment on the pleadings was timely because no other defendants would be identified or served.

(Order Setting Deadlines at 2, July 7, 2017, Docket No. 347.) Jennifer Moeller (duskyjewel), Lisa Dukes (Pixie.RN), and Uhura Russ (LadyFree28) filed motions to dismiss, and Allnurses filed a renewed motion for judgment on the pleadings. (Moeller Mot. to Dismiss, June 26, 2017, Docket No. 350; Dukes Mot. to Dismiss, June 28, 2017, Docket No. 357; Russ Mot. to Dismiss, July 2, 2017, Docket No. 369; Renewed Mot. J. Pleadings, June 28, 2017, Docket No. 363.) The Court granted Moeller's motion, finding that it lacks personal jurisdiction over her. (Order, Sept. 15, 2017, Docket No. 414.) The Magistrate Judge issued, and the Court adopted, a Report and Recommendation ("R&R") that Russ's motion be denied. (R&R at 5, 8, Nov. 27, 2017, Docket No. 418; Order, Dec. 18, 2017, Docket No. 420.) Dukes's and Allnurses' motions are now before the Court.

## DISCUSSION

ATP's allegations may be broken down into five categories: defamation, contract, fraud, trademark, and nonactionable claims.

First, there are the core Defamation claims (Count 1 against the Doe users and Count 2 against Dukes and Allnurses). The Trade Libel claim (Count 3) relies on these defamation claims. The Court will grant Dukes's motion as to these claims, converting it to one for summary judgment as necessary, because her "warns" statement and "Like" were nondefamatory. It will also grant Allnurses' motion as to these claims because it enjoys immunity for third-party content and its Open Letter was nondefamatory.

Second, there are contract claims against Allnurses related to the site's terms of service. These include Breach of Contract and the Implied Covenant of Good Faith and

Fair Dealing (Counts 5 and 6) and Promissory Estoppel (Count 7). The Court will dismiss these claims because ATP has not alleged facts sufficient to cross the line from possible to plausible with regard to contract formation or the existence of clear and definite promises made by Allnurses.

Third, there are counts related to the idea that Dukes and Allnurses committed misrepresentation or fraud by favoring the site's advertisers at the expense of ATP. These include Misrepresentation (Count 8) and actions under the New Jersey and Minnesota Consumer Fraud Acts (Counts 9 and 10). The Court will dismiss these claims, converting both motions to motions for summary judgment as necessary, because ATP does not allege specific facts in support of the allegations and has not discovered a scintilla of evidence to prove them.

Fourth, there are a series of trademark claims against Allnurses alleging that the Thread's title included ATP's mark ("Achieve Test Prep") and the forum displayed this title, including that mark, adjacent to the name Excelsior College. These are claims for Trademark Infringement under the Lanham Act (Count 11) and Unfair Competition under New Jersey common law (Count 12) and statute (Count 13). The Court will dismiss these claims because ATP has not alleged any facts to support a plausible claim that its unregistered mark is enforceable.

Finally, there are four claims (Counts 4, 15, 16, and 17) that the Court will dismiss as nonactionable, and one claim, Tortious Interference with Prospective Economic Advantage (Count 14) that the Court will dismiss because it requires underlying wrongdoing.

-13-

## I.    STANDARD OF REVIEW

### A.    Rule 12

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is reviewed under the same standard as a motion to dismiss pursuant to Rule 12(b)(6).  *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009).  The Court considers all facts alleged in the complaint as true to determine if the complaint states a claim for "relief that is plausible on its face."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in their favor.  *Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

But to survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Plausibility requires "more than a sheer possibility."  *Id*.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility,'" and must be dismissed.  *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court may properly consider materials that are necessarily embraced by the pleadings. *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004). Such materials include "documents whose contents are alleged in a complaint and whose authenticity no party questions." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (quoting *Kushner v. Beverly Enters., Inc.,* 317 F.3d 820, 831 (8th Cir. 2003)). Also included are public records that do not contradict the complaint. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (discussing court records).

### B.    Rule 56

When "matters outside the pleadings are presented to and not excluded by the Court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* The nonmoving party is normally entitled to notice that conversion is occurring so that the burden to produce affidavits, not merely allegations, is clear – but constructive notice can be sufficient. *Country Club Estates, L.L.C. v. Town of Loma Linda*, 213 F.3d 1001, 1005 (8th Cir. 2000). Failure to provide notice is harmless error if "there was nothing that [the nonmoving party] could have presented by way of countervailing evidence," *id.*, or "if the nonmoving party had an adequate opportunity to respond to the motion and material facts were neither disputed nor missing from the record," *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992).

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of

law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the lawsuit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue for trial." *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009). If one party's version of events "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II.   COMMUNICATIONS DECENCY ACT

The parties dispute whether Allnurses and Dukes enjoy broad immunity against certain state-law claims under Section 230 of the Communications Decency Act.

### A.   Legal Background

The Communications Decency Act provides that: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). An "interactive computer service" is "any information service, system, or access software

provider that provides or enables computer access by multiple users to a computer server." *Id.* § 230(f)(2). An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the internet or any other interactive computer service." *Id.* § 230(f)(3).

"Read together, these provisions bar plaintiffs from holding [interactive computer services] legally responsible for information that third parties created and developed." *Johnson v. Arden*, 614 F.3d 785, 791 (8th Cir. 2010) (citing *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162-64 (9th Cir. 2008). A website is an interactive computer service to the extent that it passively displays third-party content, but it is an information content provider when it displays content that the website is "responsible, in whole or in part" for creating. *Roommates*, 521 F.3d 1173-74 (holding that website had immunity for information submitted through an "Additional Comments" section but not for information elicited through a questionnaire); *see also S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 779 (8th Cir. 2012).

The CDA expressly preempts conflicting state law: "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). The Eighth Circuit explicitly held in *Johnson* that CDA immunity preempts state-law defamation actions, 614 F.3d at 792, but by the plain language of the statute, all state-law claims that treat the website as "the publisher or speaker" of third-party content are preempted. *See* 47 U.S.C. § 230(c)(1); *see also Roommates*, 521 F.3d at 1175 (preempting state housing discrimination claim).

-17-

**B.    Application**

It is undisputed that Allnurses is an interactive computer service; as such, it may not "be treated as the publisher or speaker" of third-party content.  47 U.S.C. § 230(c). As such, ATP's state-law claims are preempted to the extent that they rely on allegations about third-party content, but not to the extent that they allege Allnurses played a role in creating the content or rely on independent allegations.  *Johnson*, 614 F.3d at 792.

**1.    Allnurses**

Allnurses argues that it should enjoy CDA liability for all claims related to the allegedly defamatory statements of JustBeachyNurse, monkeyhq, duskyjewel, and LadyFree28 (collectively, "the four users" other than Dukes).

ATP advances a litany of arguments as to why Allnurses should not enjoy CDA immunity for the statements of the four users.  All but one, however, are unavailing,[5] and the last cannot survive a motion to dismiss.  ATP points out that CDA immunity is an affirmative defense that may only support a motion to dismiss if "the statute's barrier to suit is evident from the face of the complaint."  (Opp. J. Pleadings at 18 (quoting *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014)).)  ATP alleges that the four users were "volunteers, employees, servants, contractors or agents" of Allnurses (Compl. ¶¶ 587-

---

[5] First, ATP argues that the statute does not use the word "immunity," but cites only out-of-circuit courts that declined to extend CDA immunity to bar all causes of action against service providers.  Second, ATP claims that Allnurses has the burden of proving that it acted in good faith under § 230(c)(2)(A), which is true as far as it goes but ignores the fact that Allnurses is claiming immunity under § 230(c)(1), which contains no such requirement.  Finally, ATP argues that Allnurses selectively removed content and ultimately closed the thread – but that is precisely the type of action that the CDA was intended to protect.

88). And it argues that they were "compensated, encouraged, induced, benefitted by, or under the control of Allnurses." (Opp. J. Pleadings at 13.) The Court must consider all facts alleged in the complaint as true, but it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

The allegations that the users were the agents of Allnurses is a legal conclusion, and the only factual allegations that ATP advances in support of it are that the users post frequently, that two of the users stopped posting after ATP sent a demand letter to Allnurses, and the "solicited articles" provision in the TOS. ATP does not provide any context, such as how frequently the average Allnurses user posts or whether other websites compensate megaposters. Nor does ATP allege that Allnurses solicited or published articles from the users or that it compensated them for such articles. These allegations stand in contrast to those against Dukes, a Senior Moderator who wrote 32 articles published on the main website. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). ATP's bare factual allegations could conceivably be "consistent" with its theory that the four users were agents of Allnurses, but certainly no more. As such, ATP has failed to plausibly allege that the four users were anything other than third-party content creators.

Nor does ATP plausibly allege that Allnurses ratified the content created by the four users through Dukes as its agent. Even if it had, courts have been skeptical of the idea that a website that merely "ratifies or adopts" content is thereby responsible "for the creation or development" of that content. *See Jones v. Dirty World Entm't Recordings*

*LLC*, 755 F.3d 398, 415 (6th Cir. 2014) (holding that ratification does not make a "material contribution" to the content and thus "cannot be responsible for what makes another party's statement actionable"); *see also Xcentric Ventures, L.L.C. v. Smith*, No. 15-4008, 2015 WL 4940812, at *15 (N.D. Iowa Aug. 19, 2015) (predicting that the Eighth Circuit will adopt the material-contribution test of *Roommates* and *Jones*), *R&R adopted*, 2015 WL 5184114 (Sept. 4, 2015).

Because the four users were third parties, their statements were third-party content, and Allnurses enjoys CDA immunity against state-law defamation claims based on them. *Johnson*, 614 F.3d at 792.

Allnurses does not argue that CDA immunity applies to Dukes's "warns" statement or "Like" or to its own Open Letter. However, it does argue that CDA immunity should extend to the other state-law claims against it because they are all "predicated on the same facts underlying [the] defamation and libel claims" and are therefore all "inconsistent" with the CDA. (Mem. Supp. J. Pleadings at 31-32, July 28, 2017, Docket No. 365.) Not so. To the extent that the misrepresentation claims are focused on allegations of a conspiracy between Allnurses, its sponsors, and its users, Allnurses would arguably be designing its system to facilitate illegality. *See Johnson*, 614 F.3d at 792. The same is true with regard to the trademark claims to the extent that they allege that Allnurses willfully infringed ATP's alleged mark. *See id.* And the contract claims allege that Allnurses is liable as counter-party to a contract. *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1107 (9th Cir. 2009). As such, the Court will assume without deciding that these claims are not preempted.

-20-

### 2.    Dukes

Dukes argues that she should be immune under the CDA for actions she took as a publisher or as an agent of Allnurses as publisher.  Dukes advances this argument only with regard to her actions as Senior Moderator, not with regard to her own posts. Because *Johnson* shows that CDA immunity applies to website operators as much as owners, the Court will find that Dukes enjoys CDA immunity with regard to the statements of the other four users and her actions as Senior Moderator of third-party content.  614 F.3d at 792.

## III.    DEFAMATION

ATP brings its defamation claim against Dukes (for her statement that Excelsior "warns" about test prep companies and her "Like") and against Allnurses (for the statements of its users and for its Open Letter).  The trade libel claim (Count 3) relies on these underlying defamation claims.[6]

To succeed on a defamation claim in Minnesota, a plaintiff must prove three elements: "(1) the defamatory statement is 'communicated to someone other than the plaintiff,' (2) the statement is false, and (3) the statement 'tend[s] to harm the plaintiff's reputation and to lower [the plaintiff] in the estimation of the community.'"[7]  *Bahr v.*

---

[6] New Jersey trade libel requires a false statement and malice.  *See Patel v. Soriano*, 848 A.2d 803, 835-36 (N.J. Super. Ct. App. Div. 2004), *cert. denied*, 861 A.2d 845 (N.J. 2004).

[7] New Jersey law is not materially different.  *See G.D. v. Kenny*, 15 A.3d 300, 310 (N.J. 2011) ("(1) that defendants made a false and defamatory statement concerning [the plaintiff], (2) that the statement was communicated to another person (and not privileged), and (3) that defendants acted negligently or with actual malice.").

*Boise Cascade Corp.*, 766 N.W.2d 910, 919-20 (Minn. 2009) (quoting *Stuempges v. Park, Davis & Co.*, 297 N.W.2d 252, 255 (Minn. 1980)).  The statement must also be "of and concerning" the plaintiff, either explicitly or "by fair implication." *Glenn v. Daddy Rocks, Inc.*, 171 F. Supp. 2d 943, 948 (D. Minn. 2001) (referring to "a bar down town" is too general).

"Opinion is absolutely protected by the First Amendment." *Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1302 (8th Cir. 1986) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974)).  To determine whether a statement is properly categorized as fact or opinion, courts in the Eighth Circuit must consider the statement's precision and specificity, plausible verifiability, and the literary and public contexts in which the statement was made. *Id.* at 1302-03.

### A.    Dukes

ATP alleges that Dukes's post stating that Excelsior College "warns students about third-party publishers and test prep companies" and her "Like" of a nondefamatory post were both defamatory.

#### 1.  "Warns"

ATP alleges that Dukes's February 12, 2013, statement that "EC warns students about third-party publishers and test prep companies" defamed ATP.  (Compl. ¶ 183.) Although the post was in a thread about ATP, it does not reference ATP by name.  (*Id.*) The post contained a link to the Advisory page, allowing users to verify the truthfulness Dukes's statement.  (*Id.*)

Dukes disputes that her "warns" statement was "of and concerning" ATP. Dukes's post referred to third-party publishers and test prep companies in general, and did not specifically name ATP. As such, ATP must allege that a reader would, "by fair implication," understand it to refer to ATP. *Daddy Rocks*, 171 F. Supp. 2d at 948. The only relevant fact advanced in the Complaint is that the statement was made in a thread titled "Achieve Test Prep. . . . anyone?" (Compl. ¶ 182.) The four posts in between the original poster's inquiry and Dukes's comment discussed another test prep company, The College Network – but the first post after Dukes's is a response from the original poster referring back to ATP. (Compl. ¶ 65, Ex. G at 2-4.) As such, it is plausible that a reader would understand "by fair implication" that ATP was at least one of the companies Dukes stated that Excelsior College "warns" about.

Dukes also disputes that her "warns" statement was false. The Complaint makes the conclusory assertion that the statement is false but gives no supporting facts. (Compl. ¶ 184.) It is undisputed that Excelsior College commented on such services, because the Complaint shows that the link to the Advisory page contained the text "about-test-…ation-services." (*Id.* ¶ 183.) An Internet Archive capture taken less than a month before Dukes's post shows that the Advisory page, titled "About Test Preparation Services," was accessed via a link titled "Exam Preparation Advisory," and stated:

> **Excelsior College is not affiliated with any test preparation firm and does not endorse the products or services of these companies. No test preparation vendor is authorized to provide admissions counselling or academic advising services, or to collect any payments, on behalf of Excelsior College. Excelsior College does not send authorized representatives to a student's home.** . . .

> [Y]ou may consider using the services and products of a test preparation vendor to help you prepare for an Excelsior College Examination. Some students have found such materials beneficial while others have not. . . .
>
> **Excelsior College does not review the materials provided by test preparation companies for content or compatibility with Excelsior College Examinations.**

(Reddall Decl. ¶ 2, Ex. A at 1 (emphasis in original).)

ATP argues that the Court may not consider this evidence because it is outside the pleadings and because the Internet Archive capture of the page cannot be properly authenticated without testimony from an employee of the Internet Archive.

First, Allnurses argues that the exhibit is embraced by the pleadings because the Complaint refers to it by including the text of the URL. Regardless of whether that is correct, the Court assumes that it is outside the pleadings because ATP disputes its authenticity. However, the parties debated admission of this document at the hearing on this motion and there appears to be nothing ATP can present by way of countervailing evidence as to the content of the page. *See Gibb*, 958 F.2d at 816. As such, ATP was given "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). As such, the Court finds it appropriate to convert Dukes's motion to one for summary judgment with regard to her "warns" statement, and will do so.

Second, it is true that an affidavit from an Internet Archive employee will authenticate an Internet Archive document, and that an affidavit from counsel will not. *Sam's Riverside, Inc. v. Intercon Sols., Inc.*, 790 F. Supp. 2d 965, 980-82 (S.D. Iowa 2011). But ATP also submits a case showing that courts may simply take judicial notice

of Internet Archive documents.  *See Marten Transp., Ltd. v. Plattform Advert., Inc.*, No. 14-2464, 2016 WL 1718862, at *2-4 (D. Kan. Apr. 29, 2016) (collecting cases).  Based on ATP's authority, the Court will elect to do so here.  The Court takes judicial notice of the authenticity of the January 16, 2013, Internet Archive capture of the page at issue.

With those issues resolved, the Court turns to whether the Advisory page "warns" about test prep companies.  "Advisory" means "having or exercising power to advise" or "containing or giving advice."  *Merriam-Webster's Collegiate Dictionary* 18 (10th ed. 2001).  "Advise" means "give advice to:  counsel," "caution, warn," "recommend," or "give information or notice to."  *Id.*  "Advice" means "recommendation regarding a decision or course of conduct" or "information or notice given."  *Id.*  "Warn" means "give notice to beforehand esp. of danger or evil," "give admonishing advice to: counsel," "call one's attention to: inform," and "order to go or stay away – often used with off."  *Id.* at 1327.

It is immediately apparent that these definitions are overlapping.  Even if the Advisory page merely informed students about third-party test prep services, it still may be said that – by definition – it was warning them.  *See id.*  Examining the content of the statement shows that the Advisory page fits squarely within three of the four definitions of "warn."  ATP points to the statement that "[s]ome students have found such materials beneficial," but even that limited statement "call[s] one's attention to" the fact that there is a difference of opinion over the matter.  Taken as a whole, the Advisory page clearly "warns" (that is, gives notice to, counsels, and informs) Excelsior College students about third-party test prep companies.

-25-

ATP's claim that Dukes's "warns" statement is false "is blatantly contradicted by the record," and the Court will not adopt it for the purposes of summary judgment. *Scott*, 550 U.S. at 380. There is therefore no dispute of material fact that Dukes's "warns" statement was true, and thus nondefamatory.

### 2.    "Like"

ATP alleges that Dukes's "Like" of the "obsolete" post (which in turn quoted the "redundant" post) is defamatory because it "would be interpreted by a reasonable person with ordinary intelligence as [Dukes] and Allnurses endorsing, approving, and vouching for the truthfulness of the statements contained in the post." (Compl. ¶ 174.)

By purporting to interpret the meaning of a "Like," ATP again advances a legal conclusion. Everyday use strongly suggests that word "Like" is a quintessential statement of opinion. It is unquestionably imprecise and unverifiable. *See Janklow*, 788 F.2d at 1303. The dictionary confirms this view: "Like" may mean "to be suitable or agreeable to," "to feel attraction toward or take pleasure in," or perhaps "to wish to have." *Merriam-Webster's Collegiate Dictionary* 673 (10th ed. 2001). It does not mean "vouching for the truthfulness of." *See id.* With regard to literary context, the *Janklow* court described *Newsweek* magazine as "a forum where spirited writing" – and therefore opinion – "is expected." 788 F.2d at 1305. So too Allnurses. Indeed, it is fair to say that most readers would expect an internet forum to be even more spirited than *Newsweek* magazine. An examination of the Thread as a whole reveals that user "Likes" are ubiquitous throughout, confirming the Court's conclusion that to "Like" something

online is not to vouch for its veracity, and certainly not in whole. (*See* Compl. ¶ 65, Ex. G at 4-7, 12-13, 15-16, 18-20, 22-23, 25, 27-30, 32, 35-38, 40-42).

Moreover, even if the Court were to accept ATP's maximalist position on the meaning of a "Like," the posts that Dukes's "Like" purportedly ratified were held by this Court to contain nondefamatory opinion.[8] *E. Coast Test Prep, LLC v. Allnurses.com, Inc.* (*May 2017 Order*), No. 15-3705, 2017 WL 2242851, at *3-4 (D. Minn. May 22, 2017). Undeterred, ATP alleges that Dukes's "Like" not only republished the opinions, but that her prestige as Senior Moderator transformed them into defamatory statements of fact. But ATP's own authorities show that liability for republication is tethered to liability for the underlying statement. *See, e.g.*, *Kadetsky v. Egg Harbor Twp. Bd. of Educ.*, 82 F. Supp. 2d 327, 343 (D.N.J. 2000) (explaining that, "[i]n New Jersey, one who republishes defamatory matter is generally subject to liability as if he or she had originally published it" (quoting *Schiavone Constr. Co. v. Time, Inc.*, 735 F.2d 94, 96 (3d Cir. 1984)).

ATP does not allege facts sufficient to make out a plausible claim that Dukes's "Like" of nondefamatory statements was defamatory.

## B.    Allnurses

ATP alleges that the Open Letter Allnurses published to its website on September 12, 2016, is defamatory because it called this action "meritless litigation" and stated that

---

[8] As such, to the extent that "monkeyhq" and "JustBeachyNurse" are still parties to the case, the Court will *sua sponte* dismiss all claims against them. *See Smith v. Boyd*, 945 F.2d 1041, 1042-43 (8th Cir. 1991).

ATP "has demanded that Allnurses turn over any personally identifying information in its possession regarding the users named in the Complaint." (Compl. ¶¶ 351-72.) ATP complains that the letter did not "fully, fairly and accurately" describe the lawsuit or ATP's positions in it, argues that its litigation is not meritless, and says that it sought only particular, not "any," personally identifying information. (*Id.*)

First, ATP's bare allegation that the letter did not "fully, fairly and accurately" describe the lawsuit does not state a claim; it is based solely on the fact that the letter said that the case was about "certain comments" that were "defamatory" even though ATP brought additional claims. The Court also describes this case as a "defamation action." *See May 2017 Order*, 2017 WL 2242851, at *1; *Dec. 2016 Order*, 2016 WL 7383309, at *1. That is because defamation is unmistakably at its heart. Variations of the word appear 87 times in the Complaint. (*See generally* Compl.) This allegation does not even cross the line from risible to possible, let alone plausible.

Second, ATP's allegation about the "meritless litigation" statement does not state a claim; it is based solely on ATP's opinion that its lawsuit has merit. In allowing ATP to amend its Complaint the Court noted that "ATP provides no caselaw allowing a defamation claim based on a statement as to the quality of a legal case." *May 2017 Order*, 2017 WL 2242851, at *6. That flaw remains. By contrast, Allnurses provides extensive (if nonbinding) authority that similar statements are protected opinion. *See, e.g.*, *Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 796 F. Supp. 2d 458, 471 (S.D.N.Y. 2011) ("baseless," "absurd," "ridiculous," and "meritless"); *Blanchard & Co. v. Barrick Gold Corp.*, No. 02-3721, 2003 WL 22071173,

at *14 (E.D. La. Sept. 3, 2003) ("completely without merit," "no basis," "absolutely ridiculous"); *Wagner v. City of Holyoke*, 241 F. Supp. 2d 78, 101 (D. Mass. 2003), *aff'd sub nom. Wagner v. City Of Holyoke, Mass.*, 404 F.3d 504 (1st Cir. 2005) ("just another ploy"). This Court agrees: Allnurses' statement that this case was "meritless litigation" statement was nondefamatory opinion.

Finally, ATP's allegation that it sought only particular, rather than "any," personally identifying information about Allnurses' users does not state a claim, and even if it did, there is no genuine dispute of material fact about the issue. Allnurses points to two ATP discovery requests to support the truth of its statement. In a December 2015 request for production, ATP sought "**any** and all documents that contain **identification information** of **any** and all of the Posters, including information as to true name, location (including **without limitation**, residence, work or employer, contact information (including **without limitation**, address, phone, fax, e-mail)." (Decl. of Richard L. Ravin ("Ravin Decl.") ¶ 6, Ex. C-1 at 6 ¶ 3, Sept. 2, 2016, Docket No. 161 (emphases added).) Second, in an April 2016 interrogatory, ATP asked Allnurses to identify and attach "**any** documents [sic] that **identifies** said person or **contains identification information** pertaining to said person." (Ravin Decl. ¶ 2, Ex. A-1 at 9 ¶ 1 (emphases added).) These court documents are necessarily embraced by the pleadings. *Levy*, 477 F.3d at 991.

The only factual allegation that ATP makes in support of its claim that it did not seek "any" information is that it "did not make discovery demands for Social Security Numbers, Driver's License numbers, credit card and bank account numbers" or the like. (Compl. ¶ 366.) This phrasing echoes ATP's previous objections to use of the phrase

"personally identifying information" in a legal notice to Allnurses users, which ATP said was "misleadingly similar to a common phrase 'personally identifiable information' . . . which has the meaning of sensitive personal information such as Social Security Numbers, credit card accounts, bank accounts, financial information, etc." (*See* Letter to Magistrate Judge at 2, June 6, 2016, Docket No. 146 ("At this stage, Plaintiffs are not seeking sensitive PII.").) Despite this superficial similarity, the Open Letter stressed "the ability of our members to post anonymously" and "engage in protected anonymous speech." (Compl., Ex. H at 1.) This focus on protecting anonymous speech is reflected in the fact that Allnurses does not require users to register using their real names. (Compl. ¶ 87) Given that ATP has never alleged that Allnurses collected or possessed information of this nature, it is implausible to claim that a reasonable user would believe that ATP was seeking such data, or even that their privacy would be imperiled if it did. ATP's attempt to redefine "personally identifiable information" to refer to financial data is even more unavailing in light of the fact that the Court earlier found that "an IP address alone is personally identifiable information" because it, a physical address, and a phone number are "all modern day hallmarks of how a person may be identified." *E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 167 F. Supp. 3d 1018, 1023 (D. Minn. 2016).

ATP points out that the Court found no error in the Magistrate Judge's conclusion that ATP should be granted leave to amend its complaint to add this claim. *May 2017 Order*, 2017 WL 2242851, at *6. Rule 15(a)(2) provides that courts should "freely give leave" to amend, but courts may deny leave on the basis of futility if they have "reached the legal conclusion that the amended complaint could not withstand a motion to

dismiss." *Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 511 (8th Cir. 2012) (quoting *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 781-82 (8th Cir. 2008) (internal quotation marks omitted)). Declining to conclude that an amended complaint cannot withstand a motion to dismiss is not the same thing as concluding that it can. The Court noted that "ATP's claims based on the personally identifying information statement may fail on other grounds [than denial of leave to amend] at a later date." *May 2017 Order*, 2017 WL 2242851, at *6. That date is today.

The Court finds that ATP does not allege facts sufficient to make out a claim that Allnurses' statement was false; as such, its defamation claim is implausible. Even if the documents above were not necessarily embraced by the pleadings, there is nothing ATP can present as countervailing evidence, *see Gibb*, 958 F.2d at 816, and ATP's claim that the Open Letter implies that ATP is seeking financial information about Allnurses users is "blatantly contradicted by the record, so that no reasonable jury could believe it," *Scott*, 550 U.S. at 380. Either way, the Open Letter is not defamatory.

## IV.    CONTRACT

ATP brings three contract claims against Allnurses: breach of the TOS and the implied covenant of good faith and fair dealing (Counts 5 and 6), and promissory estoppel (Count 7).

### A.    Breach

"To establish a breach-of-contract claim, a plaintiff must show that (1) a contract was formed; (2) the plaintiff performed any conditions precedent; and (3) the defendant

breached the contract.  The formation of a contract requires communication of a specific and definite offer, acceptance, and consideration." *Taxi Connection v. Dakota, Minn. & E. R.R. Corp.*, 513 F.3d 823, 826 (8th Cir. 2008) (quoting *Commercial Assocs., Inc. v. Work Connection, Inc.*, 712 N.W.2d 772, 782 (Minn. Ct. App. 2006)).

ATP has not properly alleged that a contract was formed through the TOS.  It alleges the bald legal conclusion that the TOS is a binding agreement between Allnurses and its members, but offers no factual allegations of offer, acceptance, or consideration. (*See* Compl. ¶ 86-91.)  What few facts it does allege cut in the opposite direction.  For instance, it alleges that "Allnurses does not require that registrants use his, her or its real or legal name."  (*Id.* ¶ 87)  And, while it alleges that registration requires users to "check a box that states 'I'm not a robot,'" it does not allege, and the record does not show, that users must check a box accepting the statement "Your participation implies full acceptance with our Terms of Service."  (*Id.* ¶ 86, 88).  As such, ATP's allegation that the TOS is "a binding agreement" is implausible.

ATP also alleges that it is an intended beneficiary of the TOS because the TOS states that users are not to post libelous information and it is a party that has been libeled, further submitting that "ATP is an entity intended to benefit under the TOS."  (*Id.* ¶ 431, 435.)  But by this logic, the entire world is an intended beneficiary of the TOS.  That cannot be right.  Even more fundamentally, ATP cannot be a beneficiary because it has not plausibly alleged that the TOS is a contract between Allnurses and any other party.

"In Minnesota, the implied covenant of good faith and fair dealing does not extend to actions beyond the scope of the underlying contract."  *In re Hennepin Cty. 1986*

-32-

*Recycling Bond Litig.*, 540 N.W.2d 494, 503 (Minn. 1995).  With no contract, there can be no plausible claim for breach of the implied covenant of good faith and fair dealing.

### B.    Promissory Estoppel

A promissory estoppel claim requires a plaintiff to show three elements: (1) there was a clear and definite promise; (2) the promisor intended to induce reliance, and such reliance occurred; and (3) the promise must be enforced to prevent injustice.  *Olson v. Synergistic Techs. Bus. Sys., Inc.*, 628 N.W.2d 142, 152 (Minn. 2001).

ATP alleges that Allnurses made representations through the TOS "and through communication with Mark Olynyk."  (*Id.* ¶ 455.)  It further alleges that, were it not for these assurances, learning-is-good and GRN77 would not have posted in the thread.  (*Id.* ¶ 343.)  However, the only communication ATP alleges between Olynyk and Allnurses is about why the thread was closed.  (*Id.* ¶ 271-74.)  ATP does allege that an Allnurses administrator told an ATP employee (GRN77) that it "is perfectly acceptable" to "offer[] clarification" and "try[] to get the correct information posted as long as it stays within Terms of Service."  (Compl. ¶ 265-66.)  But even if that statement is incorporated into the promissory estoppel claim, it adds nothing beyond the alleged promises in the TOS.  And most notably, both Olynyk (as learning-is-good) and his employee (as GRN77) posted in the thread before the administrator's message.  (Compl. ¶ 65, Ex. G at 13, 19.)  ATP's claim that the two users only posted in the Thread in reliance on those statements (Compl. ¶¶ 343, 459, 462) is thus facially false – and borderline sanctionable.  *See* Fed. R. Civ. P. 11(b)(3), 11(c).

Because the assurances to Olynyk's employee are not incorporated in its promissory estoppel claim, the only relevant statements are those contained in the TOS.

ATP's assertion that Allnurses "made a clear and definite promises [sic] in the TOS" is a legal conclusion. (*Id.* ¶ 455.) Its factual allegations are incorporated by reference: ATP points to statements in the TOS that Allnurses will "promote the idea of lively debate," that users "will enjoy a great deal of freedom here . . . as long as you remain civil and polite to each other," and that "[a]ny post which is violative of any law or is invasive of a person's privacy will be taken down immediately." (*Id.* ¶ 98.) Because all of these statements are conditional, they are insufficiently definite to render a promissory estoppel claim plausible. *See Olson*, 628 N.W.2d at 152.

## V.    FRAUD

ATP brings three claims related to the idea that Dukes and Allnurses misled consumers about the website's alleged compensatory arrangements with posters: misrepresentation (Count 8) and actions under the New Jersey and Minnesota Consumer Fraud Acts (Counts 9 and 10).

Some of ATP's allegations merely restate the defamation claim as to Dukes's "warns" statement and "Like." (Compl. ¶ 469.) Others restate the contract claims with regard to statements in the TOS. (*Id.*) But the majority regard supposed material omissions by Dukes and Allnurses. (*Id.* ¶¶ 470-72.) One allegation is that Allnurses had a duty to disclose, and failed to disclose "any relationship or connections between Excelsior College and other colleges, on the one side, and Pixie.RN or other persons

working for Allnurses, or Allnurses itself, on the other side." (*Id.* ¶ 473.) Another is that the Doe defendants were compensated by Allnurses or its sponsors, had a duty to disclose that relationship, and failed to do so. (*Id.* ¶¶ 476, 480-81.) The consumer fraud counts specifically allege that Allnurses used the discussion boards "to advance the interests of its paying advertisers and sponsors" over those of ATP without disclosing those relationships, thereby misleading consumers. (*Id.* ¶¶ 501, 518.) Taken at face value, these allegations would be troubling. But it is more troubling that there are no specific facts in the Complaint to support them. Most troubling of all is the fact that ATP has failed to turn up a scintilla of evidence to prove them – despite two years of trying.

These speculative claims are not supported by factual allegations with anywhere near the level of specificity required to survive a Rule 12 motion. Without factual support, these allegations are a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. As such, it is appropriate to grant Dukes's motion to dismiss and Allnurses' renewed motion for judgment on the pleadings as to these claims.

The Court further notes that ATP has had ample opportunity to discover and submit evidence in support of these allegations. ATP sought to discover information about relationships of this nature, and Allnurses denied that they existed. (*See, e.g.*, Ravin Decl. ¶ 4, Ex. B-1 at 14 ¶ 14 ("Has any Allnurses Pesronnel (past or present) ever worked for Excelsior College? **ANSWER:** Not that Allnurses is aware of.").) The record does not contain a shred of "probative evidence to demonstrate a genuine issue [of material fact] for trial" with regard to the misrepresentation and consumer fraud claims. *Davenport*, 553 F.3d at 1113. Moreover, the Magistrate Judge has determined that no

additional defendants will be identified or served.[9]   (Order Setting Deadlines at 2.) Because ATP will not be able to produce countervailing evidence to Allnurses' unequivocal denials, *see Gibb*, 958 F.2d at 816, the Court will convert both motions into motions for summary judgment as necessary with regard to these claims and grant them.

## VI.    TRADEMARK

ATP brings three trademark claims against Allnurses:  infringement under the Lanham Act (Count 11) and unfair competition under New Jersey common law (Count 12) and statute (Count 13).

All three claims are governed by the same standard.  *See J&J Snack Foods Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 374 (D.N.J. 2002) (stating that the elements of trademark infringement and unfair competition are the same under the Lanham Act and New Jersey statutory and common law).  The Lanham Act prohibits an enforceable mark from being used in commerce[10] in a way that "is likely to cause confusion" or "misrepresents" the infringer's goods or services.  15 U.S.C. § 1125(a)(1).

---

[9] As such, to extent that the John Doe and ABC Company Defendants are still parties to the case, the Court will dismiss all claims against them.

[10] Allnurses argues that it did not use the mark in commerce because it was used only to describe ATP's services.  *See* 15 U.S.C. § 1115(b)(4).  First, ATP does not allege bad faith with regard to use of the alleged mark specifically, only with regard to the broader circumstances surrounding that use.  Second, even absent this affirmative defense, the Court is skeptical that an allegation that ATP used mark next to the name of one of its advertisers plausibly claims that the mark was "used or displayed in the sale or advertising of services."  15 U.S.C. § 1127.  Because the Court will find that ATP does not plausibly claim that it holds an enforceable mark, however, it need not decide this issue.

ATP alleges initial interest confusion[11] and customer confusion[12] because the Thread adjacently displayed the thread title (including the alleged mark "Achieve Test Prep") and forum title (including the name "Excelsior College"). (Compl. ¶¶ 63-64, 536, 543-44.) It further alleges that the Thread's "metadata" included the phrase "achieve-test-prep," generating consumer confusion by helping the thread appear higher in the results of a user search for "Achieve Test Prep." (*Id.* ¶¶ 538-40.) Finally, it alleges unfair competition and false advertising because of the underlying allegedly defamatory statements.[13] (*Id.* ¶ 541-42, 552-56, 561-62.)

---

[11] The Eighth Circuit expressly declined to adopt this doctrine. *See Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 766 (8th Cir. 2010). In the Third Circuit, relevant factors include product relatedness and the level of care exercised by consumers in the market. *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 296 (3d Cir. 2001). The fact that the Thread exists and contains extensive discussion of the high cost of the services at issue certainly suggests that these consumers are discerning.

[12] ATP alleges the legal conclusion that Allnurses' use of ATP's mark "is likely to cause confusion." (Compl. ¶ 537.) "To determine whether there is a likelihood of confusion, we must consider six factors, none of which alone is dispositive: (1) the strength of the owner's mark; (2) the similarity of the owner's mark and the alleged infringer's mark; (3) the degree of competition between the products; (4) the alleged infringer's intent to 'pass off' its goods as the trademark owner's; (5) incidents of actual confusion; and, (6) the type of product, its cost, and conditions of purchase." *Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 830 (8th Cir. 1999). ATP makes no allegations regarding the strength of its mark, similarity of the marks, or actual confusion. Nor does it allege that ATP and Allnurses are direct competitors. (*Cf.* Compl. ¶ 533, 535.) And, for the same reasons as above, the type of product, cost, and conditions factor cuts against ATP.

[13] ATP cites an easily-distinguishable Colorado district court case where a company's former employee started a new website that the company alleged was defamatory. *See Gen. Steel Domestic Sales, LLC v. Chumley*, 129 F. Supp. 3d 1158, 1163-64 (D. Colo. 2015). There, the court saw "sufficient evidence that at least some of the listed statements are false," allowing the case to proceed to trial – but noted that the speech might be noncommercial and therefore not actionable if the two parties were not direct competitors. *Id.* at 1184-85 (stressing that "[i]t is apparent" that the entire site was directed at, and designed to deter, plaintiff's potential customers). ATP does not allege that the Allnurses site was directed at or designed to deter its customers; its allegations focus on the Thread and, as above, are unsupported.

-37-

ATP's trademark claims all rely on two legal conclusions:  first, that "ATP has a valid and legally protectable trademark in 'Achieve Test Prep'," and second, that "ATP is the owner of the mark 'Achieve Test Prep' for use in commerce in connection with providing test preparation services."  (*Id.* ¶¶ 531-32.)  ATP does not allege that "Achieve Test Prep" is a registered trademark.[14]  Nor does it allege that the mark is inherently distinctive or that it has acquired secondary meaning in the marketplace, as required for descriptive marks to acquire distinctiveness.  *See Co-Rect Prods., Inc. v. Marvy! Advertising Photography, Inc.*, 780 F.2d 1324, 1329-30 (8th Cir. 1985).[15]  ATP does not allege sufficient facts to support the conclusion that it holds an enforceable mark; as such, its trademark claims are implausible and must be dismissed.

## VII.    NONACTIONABLE CLAIMS

The parties agree that the claim for non-applicability of the Communications Decency Act (Count 4) is not an affirmative claim.  (*See* Opp. J. Pleadings at 50 n.17.) As such, the Court will dismiss it.

The parties dispute three counts that are more properly styled as alternative theories of liability:  vicarious liability against Allnurses (Count 15), and contributory, vicarious, or inducement liability (Count 16) and acting in concert liability (Count 17)

---

[14] East Coast Test Prep filed for registration of the mark on March 22, 2017, and it was published for opposition on August 22.  Registration No. 87382135.

[15] In its briefing ATP claims that "Achieve" is a distinctive element and forms a distinctive mark when combined with "Test Prep," but that allegation appears nowhere in the complaint, merely states a legal conclusion, and is flatly wrong.  *See Co-Rect*, 780 F.2d at 1330.

against Allnurses, Dukes, and the ABC Company Defendants. Because these claims are not independently actionable and the Court will dismiss all other claims against these defendants, the Court will dismiss these claims as well.

Finally, ATP brings a claim for tortious interference with prospective economic advantage (Count 14) against Allnurses and Dukes. That claim requires underlying wrongdoing in both Minnesota and New Jersey. *See Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, 844 N.W.2d 210, 219 (Minn. 2014) (requiring "intentional interference [that] is either independently tortious or in violation of a state or federal" law); *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 37 (N.J. 1989) (requiring "harm [that] was inflicted intentionally and without justification or excuse"). Because the Court will dismiss all other claims against these defendants, the Court will dismiss this claim as well.

## CONCLUSION

With regard to Dukes, the Court finds that there is no genuine dispute of material fact that her "warns" statement was not defamatory because it was true, that the allegations about her "Like" of nondefamatory material do not make out a plausible claim of defamation, that the trade libel claim against her must fail in the absence of a false statement, and that the fraud and misrepresentation claims against her are supported neither by specific factual allegations nor evidence in the record. As such, the Court will grant her Motion to Dismiss with regard to all claims against her, converting it a Motion for Summary Judgment as necessary to dismiss all claims.

With regard to Allnurses, the Court finds that the Communications Decency Act renders it immune from claims against it for content produced by third parties. It further finds that ATP has failed to allege sufficient facts to support plausible claims with regard to the Open Letter, the contract claims, the fraud and misrepresentation claims, and the trademark claims. And it finds that there is no genuine dispute of material fact supporting the fraud and misrepresentation claims or the claim that the Open Letter is defamatory. As such, the Court grants its Renewed Motion for Judgment on the Pleadings with regard to all claims against it, converting it to a Motion for Summary Judgment as necessary to dismiss all claims.

The Court will further dismiss *sua sponte* the nonactionable claims against all defendants and all claims against the John Doe and ABC Company defendants. The Court notes that the only claims that will remain are Counts 1, 3, and 14 against Defendant Uhura Russ.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Defendant Lisa Dukes's Motion to Dismiss [Docket No. 357] is converted to a Motion for Summary Judgment to the extent necessary and **GRANTED**. All claims against Dukes are **DISMISSED with prejudice**.

2.    Defendants Allnurses.com and David R. Smits' Renewed Motion for Judgment on the Pleadings [Docket No. 363] is converted to a Motion for Summary

Judgment to the extent necessary and **GRANTED**.  All claims against Allnurses.com and David R. Smits **are DISMISSED with prejudice**.

3.    All claims against ABC Company Defendants and John Doe Defendants, including "JustBeachyNurse" and "monkeyhq," are **DISMISSED with prejudice**.


DATED:  January 29, 2018                            _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                                  JOHN R. TUNHEIM
                                                                        Chief Judge
                                                          United States District Court