## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

EAST COAST TEST PREP, LLC d/b/a
Achieve Test Prep, and MARK
OLYNYK,

                Plaintiffs,

    v.

Civil No. 15-3705 (JRT/ECW)

**REPORT AND RECOMMENDATION**

ALLNURSES.COM, INC.; ABC
COMPANIES 1-10; JOHN DOES 1-10;
DAVID R. SMITS, as Administrator of
the Estate of Brian Short; LISA DUKES
JENNIFER MOELLER, and UHURA
RUSS,

                Defendants.

---

This matter is before the Court on the Motion Related to ESI Costs and Sanctions
(Dkt. No. 452) brought by Defendants Allnurses.com, Inc. and David R. Smits, as
administrator of the Estate of Brian Short, (collectively, "Allnurses" or "Defendants")
seeking the entry of a protective order pursuant to Federal Rule of Civil Procedure 26(c)
allocating the costs of the discovery sought in Plaintiffs' Fifth Request for Production of
Documents and Things to Plaintiffs ("Fifth Request") and/or an award of sanctions
pursuant to both the Court's inherent authority and 28 U.S.C. § 1927 in an amount equal
to the costs incurred based on the discovery requests of Plaintiffs in the Fifth Request.
The Motion has been referred to the undersigned United States Magistrate Judge for a

report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. (Dkt. No. 461.) For the reasons discussed below, the Court recommends that the Motion be denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    ESI Related Orders

At the inception of discovery in this case, now retired United States Magistrate Judge Janie S. Mayeron issued a Pretrial Scheduling Order requiring, in part, that "[t]he parties shall preserve all electronic documents that bear on any claims, defenses or the subject matter of this lawsuit." (Dkt. No. 84 at 6.) Subsequently, Magistrate Judge Mayeron issued an ESI Inspection Protocol setting forth how costs related to Electronically Stored Information ("ESI") would be apportioned between the parties:

> The producing party shall bear the cost of e-discovery. Nothing in this protocol, however, shall preclude a party from seeking to shift the costs of e-discovery during this proceeding or at the conclusion of this proceeding pursuant to Fed. R. Civ. P. 26 and 54 or 28 U.S.C. § 1920.

(Dkt. No. 89.)

### B.    Plaintiffs' Fifth Request for Production of Documents

On or about May 20, 2016, Plaintiffs learned from Defendants that Defendant David R. Smits ("Smits"), as Administrator of the Estate of Brian Short ("Short"), was the custodian of the ESI for the deceased Short. (Dkt. No. 405-2 ¶ 4 ("he is the custodian of Brain Short's non-Allnurses.com ESI").) Plaintiffs also learned in December 2016 that Short worked on behalf of Allnurses from his home using computers, servers, devices, backups, media, or other information technology equipment. (Dkt. No. 405-5 at 10-11.) Around March 1, 2017, Plaintiffs found out that Short's electronic devices,

2

including computers, were being returned from Minnesota law enforcement officials to Short's estate. (Dkt. No. 405 ¶ 15.)  As a result, Plaintiffs served their March 28, 2017 "Fifth Request" seeking the production of Short's electronic devices.  (Dkt. No. 392-1.) In that request Plaintiffs sought the following:

> Any and all computers, servers, devices, network appliances, backups, ESI storage, or other information technology equipment and media (collectively "IT Equipment and Media") (i) belonging to Brian Short, (ii) used by Brian Short at his home, or (iii) used by Brian Short to remotely access allnurses.com, the information technology systems of Allnurses.com, Inc., Google Analytics, Liquid Web, or Joe Valez or other employees of Allnurses.com, Inc. (collectively, "Short IT Equipment and Media"), including, without limitation, any and all IT Equipment and Media which were confiscated, impounded or investigated by law enforcement, or currently in the possession custody or control of law enforcement. As used herein, (a) "device" includes without limitation, cell phones, smart phones, and tablets, (b) network appliances includes without limitation, routers (wireless or otherwise), and modems, and (c) "belonging to Brian Short" means belonging to Brian Short at or before the time of his death, even though the thing may now be owned by his estate or otherwise.

(*Id.*)  On the same day, Plaintiffs' counsel made a proposal to Defendants to allow Plaintiffs' consultant to "inspect the IT Equipment and Media at your location (presumably in Minnesota) and make digital images/copies of the IT Equipment and Media, subject to the appropriate confidentiality designation."  (Dkt. No. 392-2.) Defendants rejected this proposal.  (Dkt. No. 405 ¶ 31.)  On April 27, 2017, Defendants served their Response to the Fifth Request, objecting to the Fifth Request as overly broad and unduly burdensome, but agreeing to "to revisit Plaintiffs' Request to the extent it can be modified and made more targeted based upon what is at issue in this litigation."  (Dkt. No. 392-3.)  No specific mention was made in the objection regarding the costs

3

associated with complying with the Fifth Request and no motion for a protective order was sought at that time.

**C.    Defendants Create Forensic Images of the Short Devices and Store them on their Expert's Servers**

Defendants' counsel retained the services of Mark Lanterman ("Lanterman") with Computer Forensic Services ("CFS"). (Dkt. No. 392 ¶ 6.) Defendants were advised by Lanterman that creation of a forensically sound image was the only reliable method to mitigate risk of data loss based on device or component failure and that such an image "could be searched at a later point for relevant documents." (*Id.*) In a declaration submitted in support of this Motion, Lanterman emphasized that: "Electronic evidence must be preserved before it can be produced at all. Otherwise, the act of producing runs the risk of spoliating evidence—something Plaintiffs would argue is sanctionable. Proper preservation is a component of production with respect to electronic evidence."[1] (Dkt. No. 455 ¶ 10.) According to Defendants, all devices responsive to the Fifth Request were provided to CFS for imaging. (Dkt. No. 392 ¶ 7.) Indeed, on or about April 20, 2017 CFS imaged approximately 17-18 devices at a cost of $7,150. (Dkt. Nos. 391 ¶ 13; 454-1 at 1.) The devices had already been physically preserved up until that point. (Dkt. No. 484 ¶ 3 ("The devices had been being physically preserved up until that point. It was not until the service of the Fifth Request that Allnurses imaged the devices to allow for searching and production in response to Plaintiffs' demand.").)

---

[1]    The Court notes that Lanterman's declaration is dated August 21, 2017.

CFS preserved the forensic images of the Short devices on its servers, a service for which CFS charges.  (Dkt. No. 391 ¶ 15.)  These images were made and stored by Defendants on the servers of CFS in order to prevent device failure, prevent data loss, and to allow for searching of the ESI at a later point.  (*Id.* ¶¶ 16-17; Dkt. No. 392 ¶ 6; Dkt. No. 453 at 9.)  Defendants' counsel acknowledged at the hearing that he was aware of this charge for data storage when the data from the forensic images were first uploaded to CFS's servers.  While he claims was not initially aware of the total volume of storage in the Short devices, he was aware that the CFS storage charge was a set amount of $2.50 per gigabyte ("GB") per month.  On May 25, 2017, Defendants' counsel received an invoice from CFS, which included a May 20, 2017 charge of $25,755.00 for 10302 GB of storage.  (Dkt. Nos. 392 ¶ 11; 454-1 at 1.)

D.   **Parties' Continuing Disagreement Related to the Fifth Requests and Defendants' Mounting Storage Costs**

On May 31, 2017, the parties issued their Joint Status Report to the United States Magistrate Judge Steven E. Rau:

> The parties have also started the meet-and-confer process concerning Plaintiffs' Fifth Request for Production of Documents and Things to Defendants Allnurses and the Estate of Brian Short, requesting production of computers, devices, ESI storage, and other "IT Equipment and Media" belonging to Brian Short and used by Brian Short for remote access to Allnurses.  The meet-and-confer process has not yet been completed, but it is possible that Plaintiffs could file a Motion to Compel or that Defendants may seek a Motion for Protective Order concerning that request.  Counsel raised the topic of whether there exists an inventory created by law enforcement as to the IT Equipment and Media seized.

(Dkt. No. 339.)  There was nothing in the Joint Status Report regarding the costs incurred by Defendants for storing the forensic images with CFS nor was this issue raised in their

supplement to Magistrate Judge Rau. Plaintiffs did not learn about Defendants' decision to image all the devices through the services of an outside IT provider until the parties' May 31, 2017 communication in connection with preparing the Joint Status Report, and Plaintiffs did not learn that the images totaled approximately ten terabytes of data, or that the claimed monthly expense was approximately $25,000, until the June 7, 2017 status conference with Magistrate Judge Rau. (Dkt. Nos. 392 ¶¶ 12, 14; 392-4 at 1.)

For the next two months, the parties argued about (1) Plaintiffs' right to access the Short devices and whether the devices should be subject to discovery in this case (particularly in view of Magistrate Judge Rau's comments during the June 7, 2017 Status Conference that Plaintiffs had a burden to show that they could not get the same information from Allnurses); (2) Defendants' demand that Plaintiffs provide search terms or otherwise narrow the Fifth Request; and (3) Plaintiffs' demand that Defendants provide an inventory of the Short devices so Plaintiffs could determine how to proceed. (Dkt. Nos. 373; 374; 392-4; 392-5; 392-6; 392-7; 392-8.) On July 13, 2017, Defendants submitted a letter to Magistrate Judge Rau seeking guidance on whether a motion for protective order related to the devices was premature given the ongoing costs incurred and the failure by Plaintiffs to provide the basis for why this information would differ from that available at Allnurses. (Dkt. No. 373.) Plaintiffs replied they were not prepared to move to compel production of the Fifth Request in part because of Judge Rau's guidance that Plaintiffs had a burden to show that they could not get the same information from Defendants and because counsel for Defendants did not know what information may be stored on the Short devices. (Dkt. No. 374.) Plaintiffs' counsel

suggested getting the parties' respective litigation forensic consultants together to work through the costs involved and to determine what was on the devices.  (*Id.*)

On July 21, 2017, Plaintiffs produced to Defendants a list of approximately 50 general categories of information that they were seeking from the Short devices.  (Dkt. No. 392-8.)

During the period between the end of May and July 2017, Defendants incurred an additional $51,510 in storage costs.  (Dkt. No. 454-1 at 3-4.)

**E.    Defendants Move for a Protective Order Related to the Fifth Request**

It was not until August 9, 2017, that Defendants finally sought a protective order asking for relief from the Fifth Request:

> Defendants . . ., pursuant to Rule 29(c) . . . move for entry of a protective order pursuant to Fed. R. Civ. P. 26(c) allocating the costs of the discovery sought in the Fifth Request for Production of Documents and Things ("Fifth Request") to Plaintiffs and providing that Plaintiffs must articulate a rational basis for searching the devices and provide proposed search terms to Allnurses prior to commencement of the meet and confer process related to any motion to compel production of responsive documents.

(Dkt. No. 388.)  Defendants sought, in part, the same relief that they seek in the present Motion—allocation of storage costs.  (*Id.*; Dkt. No. 390 at 11.)  Defendants asserted that they had incurred monthly storage costs of $25,755 to store the data responsive to the Fifth Request for a total of $77,265 through August 20, 2017, and costs of $20,868.75 in professional services related to obtaining the forensic images for a total expense of $98,133.75.  (Dkt. No. 392 ¶ 31.)

A hearing on the motion for a protective order was held on August 22, 2017 before Magistrate Judge Rau.  When asked by Magistrate Judge Rau why Defendants believed

the most effective way to preserve the devices by making a forensic image and storing

them on their expert's server, counsel for Defendants responded:

> Because it's the only way. Because they asked for every bit of information on those devices and then the only way that we can -- once it became subject to that discovery request, the only way that we can guarantee that, A, it will be preserved and, B, that we can go into it to find out whatever they're looking for is to have a forensic image created, because if we touch those computers, if we turn them on, we will alter the file structure in such a way that the evidence will be compromised potentially because we don't know what they're looking for so I can't say don't touch the Outlook data.

> \* \* \*

> MR. REDDALL: So by creating a forensic image which is -- there's two parts to what we did. One is we created the image which is an exact duplication –

> THE COURT: I know what it is.

> MR. REDDALL: -- of the device. The second piece is storing that image. By creating that image, it was made available for the purposes of responding to the discovery. It is also preserved due to the sophistication of CFS's servers, that image does not have the risk of a hard drive failing which has happened. We have some devices that have failed and we have some that are locked, and so because of that, we wanted to remove that risk now that the devices were potentially subject to the litigation and were potentially subject to spoliation. So what we did is we consulted with Mr. Landerman [sic], he said, look, the only way to prevent that loss, losing that data, is to create an image. And the problem is we can't prove a negative. So if that computer failed, there may have been nothing on that computer other than family photos of their vacation to Lake Tahoe, but I can't prove that if it doesn't exist. And Mr. Ravin would absolutely explain that on that there was an e-mail or a private message between us and some third-party actor potentially out of Eastern Europe that were involved in a global conspiracy to harm ATP. In order to present that, I need to have the data there. Therefore, we contacted who we believe is a reputable vendor and knows how to create forensic images that can be verified.

(Dkt. No. 476 at 23-24.) Magistrate Judge Rau required the parties at the hearing to meet

and confer to address storage and the resulting costs. (*Id.* at 43-44.)

**F.      The Parties Resolve the Motion for Protective Order**

Based on that meet and confer, the parties submitted a stipulated Order that was

entered by Magistrate Judge Rau:

> IT IS HEREBY ORDERED that the following procedure shall be adequate
> for the preservation of the ESI on the computers, tablets, digital media and
> electronic devices (collectively, "Devices") belonging to the late Brian Short:
> (1) the original Devices shall be securely stored in a temperature controlled
> room by David R. Smits or Defendants' counsel, and (2) forensic digital
> images of the original Devices which have been created by Computer
> Forensic Services, Inc. ("CFS") under the supervision of Mark Lanterman,
> or which are created in the future, shall be stored on suitable portable external
> hard drives or flash based memory storage devices, to be agreed upon by
> Mark Lanterman and James Emerson[]) ("Portable HDD") which shall be
> securely stored in a temperature controlled room (in a separate location from
> where the original Devices are securely stored), so long as said digital images
> are verified and verifiable pursuant to suitable forensic algorithm or practices
> ("Device Images").  Plaintiffs shall not assert spoliation against Defendants
> Allnurses and David R. Smits as administrator for the Estate of Brian Short
> for the inability to access or download the Device Images stored on said
> Portable HDD as a result of the failure of the Portable HDD, so long as the
> Portable HDD were securely maintained in a temperature controlled room,
> and said failure was not due to the gross negligence of Defendants, their
> agents, or persons under their control.

(Dkt. No. 412.)  There was no apparent agreement reached as to the allocation of costs.

As a result of the parties' agreement, the motion for protective order was denied without

prejudice.  (Dkt. No. 408.)

The transfer process contemplated by the agreement involved a one-time cost on

September 25, 2017, in the amount of $10,430.  (Dkt. No. 454-1 at 6.)    However, the

transfer ultimately reduced the ongoing storage rate to $464 a month.[2]  (*Id.* at 9.)

## G.    Final Judgment and the Present Motion for a Protective Order

On August 9, 2018, an Order was entered by U.S. Chief District Judge John R. Tunheim dismissing Plaintiffs' claims against the last remaining Defendants, and final judgment was entered on August 10, 2018.  (Dkt. Nos. 450, 451.)  The present Motion was brought by Defendants on August 24, 2018, after judgment had been entered and over a year after the first motion for a protective order.[3]

On September 10, 2018, Defendants submitted a Bill of Costs seeking essentially the same storage fees as they are seeking in the present Motion.  (Dkt. No. 467.)  At the hearing, Defendants' counsel represented that they brought the present Motion, in part, because they were unsure that they would be able to recover all of storage related costs through the Bill of Costs.  On December 11, 2018, the Clerk of Court denied Defendants'

---

[2]    Defendants had incurred an additional $32,193.75 in storage fees between the date of their August 9, 2017 motion for a protective order and September 25, 2017.  (Dkt. No. 454-1 at 5-6.)

[3]    Plaintiffs filed a notice of appeal on October 9, 2018 (Dkt. No. 480).  Plaintiffs' counsel represented at the hearing that the present Motion does not pertain to any issues on appeal.  *See St. Jude Med., S.C., Inc. v. Biosense Webster, Inc.*, No. CIV. 12-621 ADM/TNL, 2015 WL 317362, at *1 (D. Minn. Jan. 26, 2015) ("A notice of appeal divests a district court of jurisdiction only of those issues involved in the appeal.") (citing *Harmon v. United States ex rel. Farmers Home Admin.*, 101 F.3d 574, 587 (8th Cir. 1996)).  A district court retains jurisdiction over collateral matters, such as attorneys' fees and costs while an appeal is pending.  *Id.*  The Court finds that the present cost-shifting motion is a collateral matter that the Court retains jurisdiction over pending appeal.

request for $133,163.88 in costs on the grounds that "Fees related to copies or storage that were incurred for discovery purposes are not taxable by the clerk."[4] (Dkt. No. 489-1 at 1.)

## II.    ANALYSIS

Defendants seek a protective order pursuant to Federal Rule of Civil Procedure 26(c) allocating the costs of the discovery sought in the Fifth Request to Plaintiffs and/or an award of sanctions pursuant to both the Court's inherent authority and 28 U.S.C. § 1927 in an amount equal to the costs incurred based on the Fifth Request. At the time of the present Motion, the costs claimed by Defendants totaled $133,163.88, and Defendants continue to incur $464.00 in storage costs per month based on the remaining data that could not be transferred. (Dkt. No. 454 ¶¶ 2-4; Dkt. No. 454-1.)

### A.    Defendants are not Entitled to a Protective Order Under Rule 26(c)

"Under [the discovery] rules, the presumption is that the responding party must bear the expense of complying with discovery requests[.]" *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978). This same presumption is set forth in the Court's Order at the inception of this case. (Dkt. No. 89.) The Court acknowledges the same Order also provides that "[n]othing in this protocol, however, shall preclude a party from seeking to shift the costs of e-discovery during this proceeding or at the conclusion of this proceeding pursuant to Fed. R. Civ. P. 26 and 54 or 28 U.S.C. § 1920." However, the Court agrees with Plaintiffs that the Order contemplated shifting the costs during the

---

[4]    A motion for review of the Clerk's decision may be made within 14 days. D. Minn. L.R. 54.3(c).

proceeding under Rule 26(c), or after the proceeding terminated under Rule 54 or 28 U.S.C. § 1920.  Indeed, Defendants have sought to shift the same costs under Rule 54 and 28 U.S.C. § 1920 after judgment was entered in this matter through their Bill of Costs.

In contrast to Rule 54, Rule 26(c), by its terms, is "forward-looking" and contemplates that there is discovery from which the person seeking protection can still be protected: "A party or any person from whom discovery is sought may move for a protective order in the court where the action **is pending**. . . ."  Fed. R. Civ. P. 26(c)(1) (emphasis added); *see also Orchestrate HR, Inc. v. Trombetta*, No. 3:13-CV-2110-P, 2015 WL 1565716, at *2 (N.D. Tex. Apr. 8, 2015).  While the express language of Rule 26 does not set limits within which a motion for protective order must be made, there is an implicit requirement that the motion be timely, or seasonable.  *See Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 413 (M.D.N.C. 1991); *see also Cornell Pump Co. v. Thompson Pump & Mfg. Co., Inc.*, No. 617CV847ORL41TBS, 2018 WL 3827248, at *3 (M.D. Fla. Feb. 22, 2018) ("A motion for protective order must be filed timely.") (collecting cases); *Ayers v. Cont'l Cas. Co.*, 240 F.R.D. 216, 221-22 (N.D.W. Va. 2007); *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 129 F.R.D. 483, 487 (D.N.J. 1990); Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2035 (3d ed.) ("[C]ourts still consider the timeliness of a motion and look to all of the circumstances in determining whether the motion is timely.").

Here, the Fifth Request was served on March 28, 2017.  Up to this point, the devices themselves had been physically preserved.  (Dkt. No. 484 ¶ 3.)  According to Defendants and their expert, "[a]n electronic device must first be preserved, and then an

inquiry can be made to determine whether a device is relevant." (Dkt. No. 455 ¶ 6.) However, Defendants have also consistently argued that they cannot comprehend "how all the personal devices and media in Brian Short's home could possibly be relevant to the claims asserted" and "consistently maintained that this request is both unduly burdensome and that the items sought are irrelevant to the claims asserted. . . ." (Dkt. No. 453 at 8.) Since the devices were already physically preserved and Defendants believed the Fifth Request sought irrelevant information and was unduly burdensome, the proper course of action would have been to move for a protective order in April 2017, before unilaterally incurring costs with imaging and storage. Rule 26(c) contemplates protective orders related to irrelevancy or undue burden or expense and for orders limiting the scope of disclosure or allocating the expenses for discovery. *See* Fed. R. Civ. P. 26(c)(1); *Smith v. Dowson*, 158 F.R.D. 138, 140 (D. Minn. 1994) (citation omitted) (finding that "good cause" under Rule 26(c) can be satisfied by a showing of irrelevancy). Defendants should have consulted with their expert to provide estimates related to the costs associated with imaging and sorting the devices and presented that information to Magistrate Judge Rau as part of motion seeking to allocate costs at that time, not 17 months later when they had already incurred $133,163.88 in costs. Even after they received the first storage bill in May 2017 for $25,755.00, Defendants took no action through motion practice to seek protection until August 2017 and did not ultimately seek the fees at issue (after the dismissal of the first motion for protective order without prejudice based on the agreement of the parties) until a year later in August 2018. As such, the Court finds that the Rule 26(c) motion is untimely.

Defendants claim they continuously reached out to Plaintiffs to narrow or eliminate the scope of the Fifth Request and that Plaintiffs uniquely controlled the ability to limit the scope of the Fifth Request and to reduce the costs being incurred as a result of their demand, which Plaintiffs refused to do. (Dkt. No. 453 at 10.) Even if Plaintiffs failed to adequately explain why they needed the Short devices or refused to meaningfully limit their search of the devices, it was incumbent upon Defendants to seek protection from the Court through a timely motion. Instead, they acted on their own and waited at their own peril–hoping that Plaintiffs would limit the scope of their demand (especially considering the evident acrimony between counsel and the parties), which only served to exacerbate their costs. *See Maxey v. Gen. Motors Corp.*, No. CIV. A. 3:95CV6-D-A, 1996 WL 692222, at *1 (N.D. Miss. Nov. 18, 1996) ("The party seeking the protective order, who has the burden of requesting and supporting it, should also be responsible for initiating the process. Permitting that party to merely note its objections and then sit back and wait for a motion to compel can only serve to prolong and exacerbate discovery disputes."); Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2035 (3d ed.) ("A party may not remain completely silent when it regards discovery as improper. If it desires not to . . . respond, it must object properly or seek a protective order. . . ."). The Court recognizes that Defendants sought a protective order in August 2017 (albeit after they had already incurred $98,133.75 in expenses), but cannot find the instant Motion timely when Defendants agreed to a resolution of that August 2017 motion that did not provide for costs and did not continue to seek relief regarding those costs from the Court at that time.

14

The Court's finding is reinforced by Fed. R. Civ. P. 26(b)(2)(C)(iii), which provides that the Court must limit the frequency or extent of discovery otherwise allowed by the rules if it determines that "the burden or expense of the **proposed discovery outweighs its likely benefit**, considering the needs of the case, the amount in controversy, the party's resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." (emphasis added). Again, the clear objective of Rule 26 is the avoidance of undue cost rather than merely the post hoc apportionment of costs, which is what Defendants seek here. *See Cason-Merenda v. Detroit Med. Ctr.*, No. CIV.A. 06-15601, 2008 WL 2714239, at *3 (E.D. Mich. July 7, 2008) ("DMC surely was, or should have been, aware of the substantial cost of responding to Plaintiffs' discovery requests before it undertook to do so. Rather than raising the issue of undue burden and cost before they were incurred, when there would have been an opportunity for the court to demand a showing of good cause by the requesting party, explore alternatives, impose conditions or otherwise encourage compromise, DMC elected to suffer the expense and only then seek contribution from the Plaintiffs. I conclude that the movant has failed to make timely resort to Rule 26(b)(2)(B).").

Moreover, Defendants have failed to demonstrate good cause warranting the shifting of ESI costs to Plaintiffs. A party may move for an order protecting disclosure or discovery, which is granted only upon a showing of good cause. *See* Fed. R. Civ. P. 26(c) (stating that "the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"). The

party moving for the protective order has the burden to demonstrate good cause for issuance of the order. *See Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 926 (8th Cir. 1999).

Most of the costs at issue involved the storage of the forensic images on CFS servers and the ultimate transfer of those images onto hard drives where the contested information now resides. The server storage costs could have been avoided had the images been initially placed onto the hard drives. Defendants were advised by their expert that creation of a forensically sound image was the only reliable method to mitigate risk of data loss based on device or component failure and that such an image could be searched at a later point for relevant documents. (Dkt. No. 392 ¶ 6.) The expert emphasized that "Electronic evidence must be preserved before it can be produced at all. Otherwise, the act of producing runs the risk of spoliating evidence—something Plaintiffs would argue is sanctionable. Proper preservation is a component of production with respect to electronic evidence." (Dkt. No. 455 ¶ 10.) However, the images were stored by Defendants on the servers of CFS in order to prevent device failure, prevent data loss and so "such an image **could be searched at a later point** for relevant documents." (Dkt. No. 391 ¶¶ 16-17; Dkt. No. 392 ¶ 6; Dkt. No. 453 at 9 (emphasis added).) The Federal Rules of Civil Procedure only require that party take "reasonable steps to preserve" ESI. *See* Fed. R. Civ. P. 37(e); *see also Lord v. Nissan Motor Co.*, No. CIV.03-3218 PAM/JSM, 2004 WL 2905323, at *2 (D. Minn. Dec. 13, 2004) ("duty to make reasonable efforts to preserve" ESI required). "A party may act reasonably by choosing a less costly form of information preservation, if it is substantially as effective

16

as more costly forms." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Up until the Fifth Request, Defendants, by their own admission, had been physically preserving the Short devices. (Dkt. No. 484 ¶ 3.) While the Court does not fault the Defendants for creating the forensic images in light of the Fifth Request and does not approve of Plaintiffs' delay in limiting the scope of the Fifth Request, there was no need to place images onto CFS servers and store them on those servers at an exorbitant cost, especially in light of Defendants' initial objections to the Fifth Request. Defendants could have reasonably preserved the information for later searching by placing the images onto hard drives, with minimal ongoing costs, in the first instance. The fact that Defendants later transferred the images to hard drives is a tacit admission that this approach would have been viable and substantially as effective as the costlier CFS server storage.[5] Even Defendants' expert did not oppose the transfer and storage onto hard drives, although he recommended indemnity for transferring the images from CFS servers to the hard drives. (Dkt. No. 455 ¶ 14.) In sum, the Court does not find good cause in transferring over $133,000 in costs to Plaintiffs because Defendants failed to take a measured approach to meeting its duty to take "reasonable steps to preserve"

---

[5]      Defendants asserted at the hearing that they had suggested transferring the documents onto a hard drive to in May of 2017, but that Plaintiffs refused to agree to this proposal. Even if Plaintiffs had previously refused to agree to the transfer, to the extent that Defendants believed they needed the Court's approval to do so, it was incumbent upon Defendants to seek prompt relief from the Court and not wait to incur additional expenses. As stated previously, Defendants moved the Court for relief in August 2017, which led to an agreement 20 days after they finally sought relief to ultimately transfer the files onto the less expensive hard drives.

evidence for production and only sought protection after incurring the exorbitant costs.

*See General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973)

(citing *United States v. Kordel*, 397 U.S. 1, 4–5 (1970)) (finding that a good cause

determination "must also include a consideration of the relative hardship to the non-

moving party should the protective order be granted").

For all of the reasons stated above, Defendants' motion for a protective order

under Rule 26(c) should be denied.

## B.    Sanctions Against Plaintiffs Under Section 1927 are Unwarranted

Section 1927 provides that:

> **Any attorney** . . . who so multiplies the proceedings in any case
> unreasonably and vexatiously may be required by the court to satisfy
> personally the excess costs, expenses, and attorneys' fees reasonably
> incurred because of such conduct.

28 U.S.C. § 1927 (emphasis added).  The statute authorizes a court to "require counsel to

satisfy personally attorneys' fees reasonably incurred by an opposing party when

counsel's conduct multiplies the proceedings in any case unreasonably and vexatiously."

*Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1011 (8th Cir. 2006) (internal

quotations omitted).  "[T]he statute permits sanctions when an attorney's conduct, viewed

objectively, manifests either intentional or reckless disregard of the attorney's duties to

the court."  *Id.* (internal quotations omitted).  "28 U.S.C. § 1927 implicates a higher level

of culpability than Rule 11 sanctions."  *M-I Drilling Fluids UK Ltd. v. Dynamic Air Inc.*,

No. 14-CV-4857 (JRT/HB), 2017 WL 8947185, at *16 (D. Minn. Feb. 3, 2017), *R. & R.*

*adopted by* 2017 WL 1193992 (D. Minn. Mar. 30, 2017) (citing *Raylon, LLC v. Complus*

*Data Innovations, Inc.*, 700 F.3d 1361, 1371 n.6 (Fed. Cir. 2012)). "Because section

1927 is penal in nature, it should be strictly construed so that it does not 'dampen the

legitimate zeal of an attorney in representing [a] client.'" *Lee v. L.B. Sales, Inc.*, 177 F.3d

714, 718 (8th Cir. 1999) (quoting *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La.,*

*Inc.,* 38 F.3d 1313, 1316 (5th Cir. 1994)). "Sanctions under § 1927 are proper if

"attorney conduct, viewed objectively, manifests either intentional or reckless disregard

of the attorney's duties to the court.'" *Ramirez-Cruz v. Chipotle Servs., LLC*, No. 15-CV-

4514-ADM-KMM, 2017 WL 8947191, at *13 (D. Minn. May 11, 2017), *R. & R. adopted*

*by* 2017 WL 3433116 (D. Minn. Aug. 10, 2017) (quoting *Lee v. First Lenders Ins. Servs.,*

*Inc.*, 236 F.3d 443, 445 (8th Cir. 2001) (quotation marks omitted)).

Here, Defendants have asked:

> [T]he Court to hold ATP accountable for some of its actions in this sprawling
> case. Even ATP has been unable to articulate any basis for the discovery
> sought by the Fifth Request. This coupled with its steadfast refusal to
> mitigate the damage it was causing warrants the Court shifting these costs to
> ATP.

(Dkt. No. 453 at 15; Dkt. No. 458 (asking that sanctions be awarded against Plaintiffs).)

As a preliminary matter, Defendants' motion under § 1927 should be denied

because Defendants are seeking relief from Plaintiffs and not their legal counsel. *See*

*Williams v. The BluePRINT, LLC*, 952 F. Supp. 2d 209, 212 (D.D.C. 2013) ("In moving

for attorney fees and costs, Mr. Williams misapprehends the scope of 28 U.S.C. § 1927.

Non-lawyers, such as BluePRINT and its owner and sole principal, Mr. Cline–Thomas,

are not covered by the statute. Only 'attorney[s] or other person[s] admitted to conduct

cases' in federal court may be so liable."); *see also Clark*, 460 F.3d at 1011; *Schepers v.*

*Babson-Smith*, No. 06-CV-15-LRR, 2008 WL 246086, at *7 n.8 (N.D. Iowa Jan. 28, 2008).

Even assuming that the present motion was brought against Plaintiffs' attorneys, the Court concludes that sanctions under § 1927 are not appropriate. The Court cannot say whether the Short devices contained relevant information because they were never examined. The information was what Short worked on behalf of Allnurses from his home using computers, servers, devices, backups, media, or other information technology equipment. (Dkt. No. 405-5 at 10-11.) The Court will not penalize Plaintiffs and its counsel under § 1927 for seeking possible relevant information. Plaintiffs inexplicably dragged their feet in identifying the information they sought on the Short devices. But the real reason Defendants are now in the present position is that Defendants chose to store the information at issue on their expert's server (at a very high cost), chose not to promptly seek protection from the Court, and chose not to use the less expensive yet reasonable method of storing the images on external hard drives—not the intentional or reckless conduct of Plaintiffs' counsel. Therefore, the Court should not exercise its discretion to reward Defendants with a remedy that is penal in nature against Plaintiffs or their counsel.

## III.    **RECOMMENDATION**

Based on the above, and on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion Related to ESI Costs and Sanctions (Dkt. No. 452) be **DENIED**.

DATED: December 11, 2018                    *s/ Elizabeth Cowan Wright*
                                            ELIZABETH COWAN WRIGHT
                                            United States Magistrate Judge


## **NOTICE**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. L.R. 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. L.R. 72.2(c).