UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| EAST COAST TEST PREP, LLC, d/b/a Achieve Test Prep, and MARK OLYNYK, | Civil No. 15-3705 (JRT/ECW) |
| Plaintiffs, | |
| v. | |
| ALLNURSES.COM, INC.; ABC COMPANIES 1-10; John Does 1-10; DAVID R. SMITS, as Administrator of the Estate of Brian Short; LISA DUKES; JENNIFER MOELLER; and UHURA RUSS, | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

Charles S. Kramer, **RIEZMAN BERGER, P.C.**, 7700 Bonhomme Avenue, Seventh Floor, St. Louis, MO 63105, Richard L. Ravin, **HARTMAN & WINNICKI, P.C.**, 74 Passaic Street, Ridgewood, NJ 07450, Robert A. Lengeling, **BEITO & LENGELING, PA**, 310 Fourth Avenue South, Suite 1050, Minneapolis, MN 55415, and Thomas M. Beito, **BEITO & LENGELING, PA**, 2915 Wayzata Boulevard, Minneapolis, MN 55405, for plaintiffs.

James J. Kretsch, Jr., and John D. Reddall, **KRETSCH LAW OFFICE, PLLC**, 17850 Kenwood Trail, Suite 219, Lakeville, MN 55044, and Keith J. Miller and Justin T. Quinn, **ROBINSON MILLER, LLC**, One Newark Center, Nineteenth Floor, Newark, NJ 07102, for Defendants Allnurses.com, Inc., and David R. Smits.

Allnurses.com, Inc., and David R. Smits, as administrator of the Estate of Brian Short, (collectively "Defendants") move for sanctions against Plaintiffs and for a protective order pursuant to Federal Rule of Civil Procedure 26(c). Defendants seek to allocate the

costs associated with producing and storing electronically stored information ("ESI") in response to a discovery request by Plaintiffs.

The Court has before it a Report and Recommendation ("R&R") of United States Magistrate Judge Elizabeth Cowan Wright recommending that Defendants' motion be denied, as well as Defendants' objections to the R&R. Also before the Court is Defendants' Motion for Review of Clerk's Action, in which Defendants seek the Court's review of costs denied by the Clerk.

Because the Magistrate Judge did not clearly err in determining that Defendants' Motion for Sanctions and a Protective Order should be denied, the Court will overrule Defendants' objections, adopt the R&R, and deny the Motion. Additionally, since only some of the costs that Defendants seek to tax fit within the scope of what may be taxed by a prevailing party, Defendants' Motion for Review of Clerk's Action will be granted in part and denied in part.

## BACKGROUND

Defendant Allnurses.com, Inc., hosts a website that "provid[es] a place where nurses can network, share, and learn from their peers." (3d Am. Compl. ¶¶ 4, 39, Jan. 24, 2017, Docket No. 268.) Plaintiffs East Coast Test Prep, LLC, and Mark Olynyk brought an action for defamation, citing numerous posts on the website as well as certain actions and inaction of moderators and administrators of the site. (*E.g. id.* ¶¶ 136, 139, 174.) The case was ultimately dismissed. (J., Aug. 10, 2018, Docket No. 451.)

Defendants now seek to transfer to Plaintiffs the costs associated with producing and storing ESI related to Plaintiffs' Fifth Request for Production of Documents and Things ("Fifth Request"). (Mot. for Sanctions at 1-2, Aug. 24, 2018, Docket. No. 452.) In addition, Defendants move for sanctions against Plaintiffs' counsel for "excessive costs incurred based on the vexatious and unreasonable discovery requests" by Plaintiffs. (*Id.*) The Magistrate Judge recommends that Defendants' motion be denied. (R&R at 20, Dec. 11, 2018, Docket No. 490.) Defendants object. (Objs., Dec. 26, 2018, Docket No. 493.)

Defendants also seek the Court's review of taxation of costs denied by the Clerk. (Mot. for Review of Taxation of Costs, Dec. 26, 2018, Docket No. 491.)

## I. FACTUAL BACKGROUND

At the heart of this dispute is Plaintiffs' Fifth Request, which sought:

> Any and all computers, servers, devices, network appliances, backups, ESI storage, or other information technology equipment and media (collectively "IT Equipment and Media") (i) belonging to Brian Short, (ii) used by Brian Short at his home, or (iii) used by Brian Short to remotely access allnurses.com . . . . As used herein, (a) "device" includes without limitation, cell phones, smart phones, and tablets, (b) network appliances includes without limitation, routers (wireless or otherwise), and modems, and (c) "belonging to Brian Short" means belonging to Brian Short at or before the time of his death, even though the thing may now be owned by his estate or otherwise.

(Decl. of John Reddall ("Reddall Decl.") ¶¶ 2-3 & Ex. A, Aug. 9, 2017, Docket No. 392.)

Magistrate Judge Janie Mayeron specifically addressed the issue of allocating ESI production costs in a January 2016 order, which specified:

> The producing party shall bear the cost of e-discovery. Nothing in this protocol, however, shall preclude a party from seeking to shift the costs of e-discovery during this proceeding or at the conclusion of this proceeding pursuant to Fed. R. Civ. P. 26 and 54 or 28 U.S.C. § 1920.

(ESI Protocol Order at 3, Jan. 12, 2016, Docket No. 89.)

Plaintiffs sought information from the personal computers and devices of Brian Short, the founder and President of Allnurses.com, after they learned that Short had done work for Allnurses.com at home. (Decl. of Paul A. Grote ("Grote Decl.") ¶¶ 10-14 & Ex. E at 10-11, Aug. 18, 2017, Docket No. 405; 3d Am. Compl. ¶ 5.) Short died on September 10, 2015, and his computers and devices were in the possession of Minnesota law enforcement officials. (Grote Decl. ¶¶ 5, 15.) The devices were returned to Short's estate around March 1, 2017. (*Id.*) When Plaintiffs learned that these computers and devices had been returned, they filed their Fifth Request. (*Id.* ¶ 16.)

On the same day Plaintiffs filed the Fifth Request, they offered to send their own consultant to examine and create digital images of the information located on Short's computers and devices, but Defendants did not respond to this offer. (*Id.* ¶¶ 17-19.) In the meantime, Defendants consulted with Mark Lanterman of Computer Forensic Services ("CFS") who advised that the only reliable method to mitigate risk of data loss or device failure was to make a forensically sound image of the computers and devices. (Reddall Decl. ¶ 6.)

Following Lanterman's advice, Defendants provided CFS thirty-five devices on April 20, 2017, and asked CFS to forensically preserve, or "image," them. (Decl. of Mark Lanterman ("Lanterman Decl.") ¶ 13, Aug. 9, 2017, Docket No. 391.) Imaging ensures

that data cannot be altered during analysis. (*Id.* ¶¶ 10-11.) Of these thirty-five devices, eighteen were imaged. (*Id.* ¶ 13.) Imaging the devices cost Defendants $7,150.00. (2d Decl. of John Reddall ¶ 2, Ex. A ("Invoice") at 1, Aug. 24, 2018, Docket No. 454-1.) In addition to charging for imaging the devices, CFS also charges $2.50 per gigabyte per month to store the data. (Lanterman Declaration ¶ 17.) Since CFS was storing 10,302 gigabytes of data for Defendants, the monthly storage charge was roughly $25,755.00. (Invoice at 1.)

On April 27, 2017, after giving the devices to CFS for imaging, Defendants objected to the Fifth Request on the grounds that the request was not limited to discovering relevant information and that the request was unduly burdensome and costly. (Reddall Decl. ¶ 8.) At this point, Defendants had not yet incurred storage fees. (*Id.* ¶ 9.) In their objection, Defendants stated a willingness to "revisit Plaintiffs' request to the extent it can be modified and made more targeted based upon what is at issue in this litigation." (*Id.* ¶ 8 & Ex. C at 4, Aug. 9, 2017, Docket No. 392-3.) Notably absent from the objection was any mention of the potential costliness of producing images of the computers and devices beyond a general objection that "the burden or expense of the proposed discovery outweighs its likely benefit." (*Id.* at 3.)

On May 31, 2017, the parties submitted a Joint Status Report to Magistrate Judge Steven E. Rau. (Status Report, May 31, 2017, Docket No. 339.) In this report, the parties noted that they had begun the meet-and-confer process regarding the Fifth Request, noting that they might file motions either seeking to compel the information or seeking a protective order. (*Id.* at 2.) Nowhere in the report did the parties mention the cost of

continuing to store the data with CFS. (*See id.*)  Plaintiffs claim that they only became aware of the imaging of the devices and the storage of the data on the day the parties filed this status report and did not become aware of the associated costs until a status conference held one week later. (Grote Decl. ¶¶ 31, 35.)  Defendants claim that they informed Plaintiffs of the costs being incurred as a result of the Fifth Request during a phone call on May 31, 2017. (Redall Decl. ¶ 12.)

In the following months, the parties continued to argue over details related to the Fifth Request. (R&R at 6-7.)  Specifically, the parties disagreed about the Plaintiffs' right to access the devices, whether they were discoverable, Defendants' demand that Plaintiffs provide search terms to narrow the request, and Plaintiffs' demand that Defendants provide an inventory of the devices in their possession. (*Id.*)

In mid-July, Defendants voiced their concerns about the ongoing costs of storing the imaged information in the form of a letter to Magistrate Judge Rau. (Defs.' Letter to Magistrate Judge, July 13. 2017, Docket No. 373.)  Plaintiffs responded that they were not ready to move to compel production of the Fifth Request because they were still seeking alternate ways to obtain the information, as they were apparently advised to do by Magistrate Judge Rau in a Status Conference. (Pls.' Letter to Magistrate Judge, July 14, 2017, Docket No. 374.)  Roughly one week later, Plaintiffs produced a list of about fifty general categories of information they were seeking, while also seeming to narrow the scope of computers and devices they were seeking by specifying that Plaintiffs were only interested in those devices of Short, and not of his wife or children. (Reddall Decl. ¶ 28 & Ex. G.)

On August 9, 2017, Defendants filed a protective order from the Fifth Request. (Mot. for Protective Order, Aug. 9, 2017, Docket No. 388.) In this motion, Defendants sought to allocate the costs associated with the Fifth Request to Plaintiffs. (*Id.*) Defendants claim that at this point they had incurred nearly $100,000 in expenses related to complying with the Fifth Request for production. (Reddall Decl. ¶ 31.)

On August 22, 2017, Magistrate Judge Rau held a hearing and ordered the parties to meet and confer to attempt to resolve the issue of storage costs. (Tr. at 43-44, Sept. 17, 2018, Docket No. 476.) The parties submitted a stipulated order to Magistrate Judge Rau, which was then entered. (Order on ESI Stip., Sept 5, 2017, Docket No. 412.) However, this order addressed only procedures by which the devices and the images would be stored, not the costs associated with those procedures. (*See id.*) Defendants agreed to physically preserve the original devices by keeping them in a temperature-controlled room and to transfer the device images to portable external hard drives similarly but separately stored. (*Id.* at 2.) In return, Plaintiffs agreed not to assert spoliation against Defendants, so long as these procedures were followed. (*Id.* at 2-3.) Transferring the data cost $10,430.00 but reduced the monthly storage charge from over $25,000.00 to roughly $500.00. (Invoice at 6-17.)

## II. PROCEDURAL BACKGROUND

On August 10, 2018, the Court dismissed the last remaining Defendant and dismissed the action. (J. at 1.) Two weeks later, and nearly fifteen months after they started

to incur storage costs related to the Fifth Request, Defendants filed the Motion for Sanctions and Protective Order that is now at issue.

Magistrate Judge Cowan Wright held a hearing on Defendants' Motion on October 26, 2018. (Minute Entry, Oct. 26, 2018, Docket No. 485.) On December 11, 2018, she issued an R&R recommending that both motions be denied. (R. & R. at 20.) Defendants object. (Objs.)

Defendants also submitted a Bill of Costs seeking to tax the ESI costs against Plaintiffs as "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." (Bill of Costs, Sept. 10, 2018, Docket No. 467.) The Clerk of Court denied the request, stating that "[f]ees related to copies or storage that were incurred for discovery purposes are not taxable by the clerk." (Taxation of Costs Summ. at 1, Dec. 11, 2018, Docket No. 489-1.) Defendants move for review. (Mot. for Review of Taxation of Costs.)

## DISCUSSION

### I. STANDARD OF REVIEW

Upon the filing of an R&R by a magistrate judge, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1). "A district court's review of a magistrate judge's decision on nondispositive matters is 'extremely deferential.'" *4Brava, LLC v. Sachs*, No. CV 15-2743 (JRT/DTS), 2018 WL 2254568, at *1 (D. Minn. May 17, 2018) (quoting *Roble v. Celestica Corp.*, 627 F. Supp. 2d 1008, 1014 (D. Minn. 2007)). The

Court will reverse such a decision only if it is clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); D. Minn. LR 72.2(a). For a decision to be clearly erroneous, the Court must have a "definite and firm conviction that a mistake has been committed." *Lisdahl v. Mayo Found.*, 633 F.3d 712, 717 (8th Cir. 2011) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). While the Magistrate Judge issued an R&R, not an order, the R&R concerns only non-dispositive matters. As such, the Court will review it for clear error. *See 4Brava*, 2018 WL 2254568, at *1 & n.1.

## II.   PROTECTIVE ORDER

First, Defendants object to the R&R because, in their view, the Magistrate Judge "incorrectly concluded that Fed. R. Civ. P. 26(c) no longer provides an avenue of relief following the issuance of a judgment of dismissal as the rule requires that the motion be brought in 'the court where the action is pending.'" (Objs. at 7.) Defendants argue that Rule 26(c) contains no temporal limitation and note that they are indeed bringing this motion "in the court where the action is pending" as required by the Rule. (*Id.*)

This objection reflects a misunderstanding of the R&R. The Magistrate Judge did not find that Rule 26(c) imposed a time limitation on such a motion. Indeed, the Magistrate Judge expressly noted that Rule 26(c) "does not set limits within which a motion for protective order must be made . . . ." (R&R at 12.) Rather, the Magistrate Judge noted that such a motion must be "timely" or "seasonable." (*Id.*) This reading of Rule 26(c) is not erroneous, and the Magistrate Judge did not err in concluding that Defendants' motion was neither timely nor seasonable. The optimal time for Defendants to bring this motion would

have been before the imaging and storage costs were incurred. The next best time would have been while Defendants were incurring the exorbitant storage charges, which is to say any time between when the devices were imaged and first stored and when they were eventually transferred to an external hard drive. In any case, bringing this motion post-judgment, and more than a year after Defendants incurred the costs is not seasonable or timely.

Defendants also argue that the Magistrate Judge misunderstood the actions they took to avoid these costs and argue that the Magistrate Judge erred in finding that they failed to engage in any motion practice before or while incurring the costs. Defendants argue that they did not sit by passively. Rather, they took significant steps, including phone conferences with the Magistrate Judge and opposing counsel, as well as frequent correspondence with opposing counsel, towards resolving this dispute during the summer of 2017.

While Defendants made some attempts to resolve the issue of storage costs, which they unilaterally elected to incur, they cannot claim to have exhausted their potential avenues for resolution because they did not file a motion. While Defendants' attempts to resolve the issue without the Court's intervention are appreciated, the issue did not get resolved. Defendants never gave the Court the opportunity to resolve the issue because Defendants did not bring a motion. Moreover, Defendants have not explained their failure to bring a motion when meet and confer did not resolve this issue. That Defendants eventually filed a Motion for Protective Order shows that they knew such an avenue for resolution existed.

Finally, Defendants argue that the Magistrate Judge erred by failing to consider how Plaintiffs' actions contributed to this issue and partially explain Defendants' lack of earlier action. The R&R states that:

> Even if Plaintiffs failed to adequately explain why they needed the Short devices or refused to meaningfully limit their search of the devices, it was incumbent upon Defendants to seek protection from the Court through a timely motion. Instead, they acted on their own and waited at their own peril–hoping that Plaintiffs would limit the scope of their demand (especially considering the evident acrimony between counsel and the parties), which only served to exacerbate their costs.

(R&R at 14.)

If Defendants truly wished to curtail the costs or truly believed Plaintiffs to be acting in bad faith, they should have sought relief from the Court while the costs were accumulating. Instead, Defendants waited nearly fifteen months from the time they first began incurring storage costs to resolve this issue.

Defendants attempt to cast blame on Plaintiffs for "continually [taking] steps to thwart Allnurses from ceasing the ongoing storage fees." (Objs. at 10.) But Defendants chose this costly storage method and continued to incur the monthly storage charges. It was within Defendants' power to "cease[] the ongoing storage fees," (*id.*), by either using a less-expensive storage option or bringing an earlier motion for a protective order. Defendants did neither. As such, the Magistrate Judge did not clearly err in concluding that the Motion for a Protective Order should be denied.

## III. SANCTIONS

Defendants also object to the R&R's conclusion that § 1927 sanctions against Plaintiffs are unwarranted. Shortly after the last Defendant was dismissed, Defendants sought sanctions against Plaintiff in the amount of "excessive costs incurred based on the vexatious and unreasonable discovery requests" made by Plaintiffs. (Mot. for Sanctions and Protective Order at 2.) The R&R recommends denial of the motion because Defendants sought relief from Plaintiffs rather than their legal counsel. However, even interpreting the motion as seeking relief from Plaintiffs' counsel, the Magistrate Judge concluded that sanctions are not warranted because it is possible that Short's devices contained relevant information. (R&R at 20.) The R&R acknowledged that "Plaintiffs inexplicably dragged their feet in identifying the information they sought" on the devices but concluded that Defendants find themselves in their present situation due to their own actions in choosing to store the information at such a high cost, choosing not to promptly seek protection from the Court, and choosing not to use the less expensive yet reasonable method of storing the images on external hard drives. (*Id.*)

Defendants object to this conclusion and restate the arguments made to the Magistrate Judge. Defendants make a series of conclusory statements about Plaintiffs' counsel's mental state and claim that Plaintiffs' counsel "[k]nowingly serv[ed] a baseless discovery request . . . ."[1] (Objs. at 12.) These conclusory statements are not clearly

---

[1] Defendants claim that "it is clear from the record that Plaintiffs never had any reasonable basis for believing that relevant information resided on these devices" and that Plaintiffs' counsel "knew that there was no basis for their request." (Objs. at 8.)

supported by the record. If Short used the devices to conduct work on Allnurses.com from home, it is possible – and even likely – that they contained relevant information. As such, the Magistrate Judge did not clearly err in finding that sanctions are not warranted in this case.

### III.     MOTION FOR REVIEW OF CLERK'S ACTION

Defendants also seek review of the Clerk's decision not to allow taxation of certain fees. "A prevailing party is presumptively entitled to recover all of its costs." *168th & Dodge, LP v. Rave Reviews Cinemas, LLC*, 501 F.3d 945, 958 (8th Cir. 2007) (quoting *In re Derailment Cases*, 417 F.3d 840, 844 (8th Cir. 2005)). However, the Court has broad discretion in awarding costs. *Cattanach v. BNSF Ry. Co.*, No. CV 13-1664 (JRT/JSM), 2016 WL 6915507, at *3 (D. Minn. Oct. 31, 2016), *R&R adopted*, No. CV 13-1664 (JRT/JSM), 2016 WL 6916803 (D. Minn. Nov. 21, 2016).

"Review of the Clerk's assessment of costs is a de novo determination addressed to the sound discretion of the court." *Am. Steel Works v. Hurley Const. Co.*, 46 F.R.D. 465, 467 (D. Minn. 1969) (citing *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 233 (1964)). The party seeking review of the Clerk's taxation of costs bears the burden of showing that a cost judgment is "inequitable under the circumstances." *Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494, 498 (8th Cir. 2002).

The Clerk denied Defendants' request for $400.00 for "[f]ees of the clerk," stating that "[o]nly fees paid to the Clerk of the Court for the District of Minnesota are taxable by the clerk". (Taxation of Costs Summ. at 1.) Defendants admit that these fees were paid to

the U.S. District Court for the District of New Jersey, not the District of Minnesota. (Defs.' Mem. Supp. at 4, Dec. 26, 2018, Docket No. 492.) Defendants provide no argument or legal support for their contention that "[t]hese costs are properly taxable under 28 U.S.C. § 1920(1)." (*Id.*) Because Defendants have not met their burden of showing that the cost judgment is inequitable, the Court will deny Defendants' motion on this ground.

The Clerk also denied Defendants' request for $133,163.88 for "[f]ees for copies," stating that "[f]ees related to copies or storage that were incurred for discovery purposes are not taxable by the clerk." (Taxation of Costs Summ. at 1.) Defendants note that the scope of costs covered by 28 U.S.C § 1920(4) is unsettled. (Defs.' Mem. Supp. at 5.) They urge this Court to tax their ESI-related costs because they were incurred in response to Plaintiffs' Fifth Request and because the costs are due to Plaintiffs' "intransigence." (*Id.* at 7.)

The Eighth Circuit Court of Appeals does not appear to have decided whether ESI production and preservation costs are covered under § 1920(4). However, the Supreme Court has noted that the scope of taxable costs is narrow, commenting that "[t]axable costs are limited to relatively minor, incidental expenses" and should typically be only a "fraction of the nontaxable expenses borne by litigants . . . ." *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 573-75 (2012).

The Supreme Court's narrow construction of § 1920 suggests that, at the very least, § 1920(4) would not cover the costs of ESI preservation. However, courts have interpreted § 1920(4) to include costs related to ESI production, including imaging of drives, transfer of files to drives or discs, and extraction or imaging of metadata, "where required to provide

a complete copy of a file if such metadata is requested by the opposing party . . . ." *See Jo Ann Howard & Assocs., P.C. v. Cassity*, 146 F. Supp. 3d 1071, 1084 (E.D. Mo. 2015) (collecting cases). The Federal Circuit has held that § 1920(4) includes "those costs necessary to duplicate an electronic document in as faithful and complete a manner as required" but does not include preparatory costs incurred leading up to duplication or costs incurred after duplication. *CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1328 (Fed. Cir. 2013).

Defendants imaged and stored ESI in response to Plaintiffs' Fifth Request, which sought the entirety of Short's devices and media. As such, the Court finds that the initial imaging of the devices, which cost $7,150.00, (*see* Invoice at 1), constitutes "making copies of any materials . . . necessarily obtained for use in the case" under § 1920(4). The Court will thus tax those costs against Plaintiffs. The Court also finds that transferring the images to hard drives, which cost $10,430.00, (*see* Invoice at 6), falls under § 1920(4). As such, it will tax those costs against Plaintiffs. Defendants' imaging of the devices and the transfer of those images to hard drives are "examples of procedures . . . which are implicit in the creation of a copy of a digital document, necessarily performed in order to accurately reproduce the document in accordance with a production request . . . ." *Jo Ann Howard*, 146 F. Supp. 3d at 1084; *see also Country Vintner of N. Carolina, LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 260 (4th Cir. 2013) (noting that § 1920(4) "limits taxable costs to . . . converting electronic files to non-editable formats, and burning the files onto discs.").

Furthermore, the Court finds in its broad discretion that this division of costs is equitable under the circumstances. While Defendants bear some fault for the exorbitant

ESI preservation costs incurred in this case, it was Plaintiffs who sought production of the ESI and contributed to the delay in resolving this issue. Thus, it is just that Plaintiffs bear the production costs.

For these reasons, the Court will grant Defendants' motion as to ESI production costs and order that $17,580.00 be taxed against Plaintiffs. The Court will deny the motion as to all other costs.

## CONCLUSION

Because the Magistrate Judge did not err in finding that Defendants' motion for a protective order was not timely and that sanctions are not warranted, the Court will overrule Defendants' objections, adopt the R&R, and deny Defendants' Motion. Additionally, because only some of Defendants' requested costs fit within the scope of what is taxable under § 1920, Defendants' Motion for Review of Clerk's Action will be granted in part and denied in part.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Objections to the Report and Recommendation [Docket No. 493] are **OVERRULED;**

2. The Magistrate Judge's Report and Recommendation [Docket No. 490] is **ADOPTED**;

3. Defendants' Motion for Sanctions and a Protective Order [Docket No. 452] is **DENIED**;

4. Defendants' Motion for Review of Clerk's Action [Docket No. 491] is **GRANTED in part and DENIED in part** as described herein; and

5. The Clerk of Court is ordered to Amend the Cost Judgment [Docket No. 489] to allow taxation of $17,580.00 under "Fees for Copies."

DATED: April 4, 2019  
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM  
Chief Judge  
United States District Court